## HENRIETTE MAILLE, Respondent, *v.* SAMUEL LORD AND OTHERS, APPELLANTS.

*False Imprisonment—Justification—Liability of Master for trespass of servant.*

It is no defence in an action of trespass and false imprisonment to show that those charged with committing the trespass acted in the matter in the utmost good faith, and arrested and searched the Plaintiff supposing her to have been guilty of committing a larceny. The calling to one's aid a policeman, to arrest and search the person of the Plaintiff without warrant, furnishes no excuse for the trespass. But when the trespass is committed by the servants or clerks of the Defendants, without their knowledge or direction, they are not to be deemed as acting under the employment of the Defendants so as to make the Defendants liable. It cannot be presumed that a master, by intrusting his servant with his property, and conferring power upon him to transact his business, thereby authorizes him to do any act which the master himself is not authorized to do.

ACTION to recover damages for an alleged illegal arrest and imprisonment of the Plaintiff by the Defendants, and compelling her to submit to be searched for the discovery of a dress, claimed to have been stolen by the Plaintiff from the Defendants, and concealed upon her person.

The answer in substance denied the complaint.

Upon trial of the issue before a jury, it was proved that the Defendants were partners in the mercantile business in New York, and had three stores in which goods were kept for sale, one of which was upon Grand Street; that at this store they employed a large number of clerks and also some females in their business there, and a superintendent of the establishment; that the Plaintiff went to the store to purchase goods, and made some purchases; that the superintendent called in a policeman, and directed the clerk with whom the Plaintiff was trading to request her to go down stairs; that she, with some reluctance, complied, and was followed by the clerk, superintendent, and policeman; that the other persons were excluded from the room, and then the Plaintiff was requested

to give up the dress she had concealed upon her person; that Plaintiff denied having any dress concealed; that a partial search was made and no dress found; that the superintendent called a female, who was directed to retire with Plaintiff and search her; that this was done, and nothing found, and then Plaintiff was permitted to depart.

There was no evidence that either of the Defendants were at the store at the time, or had any knowledge of, or gave any authority for, this transaction, except what might be implied from their employment of the clerk and the superintendent for the transaction of their business in that store.

After proving the above facts, and introducing evidence as to the effect produced thereby upon her health, the Plaintiff rested. The Defendants' counsel moved for a dismissal of the complaint, upon the following among other grounds: that the acts complained of were not shown to have been committed by Defendants, or by their authority, but to have been wilful trespasses, for which they were not liable. The motion was denied.

The Defendants introduced witnesses to prove various facts, among whom were each of the Defendants, who severally testified that he was not at the store at the time, and had no knowledge of, and gave no authority to the superintendent or any other person for committing any of the acts charged by the Plaintiff. The superintendent, upon these points, testified the same as the Defendants.

Various exceptions were taken by the Defendants to the rulings of the Judge upon the trial, and also to his charge and refusals to charge. The jury rendered a verdict for the Plaintiff of $4,000, upon which judgment was rendered, and the same affirmed, upon appeal, by the New York Common Pleas, from which the Defendants appealed to this Court.

*C. L. Spilthorn* and *J. B. Fogarty* for Respondent.

*J. Graham* for Appellants.


GROVER, J.—The question whether the Plaintiff was detained and searched against her will, was conclusively settled in her

favor by the verdict. The evidence fully warranted the submission of this question to the jury. There was no prosecution against the Plaintiff instituted. Calling in the policeman, and informing him of the suspicion entertained against the Plaintiff, and of the facts upon which it was grounded, had not the semblance of a criminal prosecution, and, consequently, whether these and the subsequent acts were done in good faith on the part of the superintendent, or maliciously, was only material upon the question of damages, provided the Defendants were liable therefor.

The utmost good faith, and the firmest belief, that a person has stolen, and secreted about his or her person goods, will not justify the owner in detaining and searching the suspected person; consequently, the acts of the superintendent of the Defendants cannot be justified upon these grounds, nor this action barred, if the Defendants are responsible for his acts in this respect. Calling in the policeman, and his presence and participation, afford no justification. The policeman had no right to order the search of the Plaintiff by the female, and he could confer no power upon any one to search. The exceptions taken to the Judge's ruling upon these questions were correct.

The material question upon the merits is, whether the Defendants were liable for these acts of their superintendent. A master is responsible, civilly, for the fraud, negligence, or other wrongful act of his servant, committed in the transaction of his business. This is the general rule. (Griswold *v.* Haven, 25 N. Y. 526, and cases cited.) He is not responsible for the wilful injury committed by the servant while so engaged, unless such injury results from the business transacted by the servant for his master. (Wright *v.* Wilcox, 19 Wend. 343, and cases cited; Hibbard *v.* The N. Y. & Erie R. R. Co., 15 N. Y. 455.)

In the former case, it was held that the master was not responsible for an injury caused by his servant in wilfully driving his wagon over a person; that, in doing such an act wilfully, the servant was not engaged in his master's business, but had, in respect to this act, departed therefrom.

In Griswold *v.* Haven (supra), it was held that the principal

was responsible for the fraud of his agent, committed in transacting the business of the principal.

In Sanford v. The Eighth Avenue R. R. Co. it was held, that the master was responsible for the act of his servant in wrongfully ejecting a passenger from the train, and responsible, also, for any acts of aggravation in doing the act causing an injury to the passenger.

This judgment was based upon the principle that a part of the duties of the servant was to exclude from the cars such passengers as refused to pay fare, or to comply with the regulations adopted by the company; and that, having authority from the master to perform such acts, all such acts done by the servant were to be regarded as done by virtue of his authority, and in the execution of the master's business, and that, consequently, the master was liable for all injuries sustained from the wrongful acts of the servant in their performance.

Applying these principles to the present case, the inquiry is, whether a merchant, by employing a clerk to sell goods for him in his absence, or a superintendent to take the general charge and management of his business at a particular store, thereby confers authority upon such clerk or superintendent to arrest, detain, and search any one suspected of having stolen and secreted about his person any of the goods kept in such store. If he does, he is responsible for such acts of the clerk or superintendent. If not, then such acts are not within the scope of the authority delegated to the superintendent, and the employer is not responsible therefor, for the reason that, while in their performance, the servant is not engaged in the business of the master, any more than in committing an assault upon or slandering a customer.

In examining this question it must be assumed that, by the employment, the master confers upon the servant the right to do all necessary and proper acts for the protection and preservation of his property; to protect it against thieves and marauders; and that the servant owes the duty so to protect it to his employer. But this does not include the power in question. It cannot be presumed that a master, by intrusting his servant with his property, and conferring power upon him to transact his business,

12

thereby authorizes him to do any act for its protection that he could not lawfully do himself, if present.

The master would not, if present, be justified in arresting, detaining, and searching a person upon suspicion, however strong, of having stolen his goods and secreted them upon his person. The authority of the Defendants to the superintendent could not, therefore, be implied from his employment. The act was not done in the business of the Defendants, and they were not, as masters, responsible therefor. If not responsible, if the superintendent acted in good faith in the belief of the Plaintiff's guilt, they clearly would not be if he acted from malice, in the absence of such belief. The Plaintiff having, at the time of resting, given no evidence connecting the Defendants with the clerk and superintendent, except their employment by the former, the motion of Defendants for a dismissal of the complaint should have been granted by the Judge, and the exception to his refusal was well taken.

The attempt in the answer to justify the act was no evidence against the Defendants upon the issue presented by the denial of having committed the acts. The only remaining question upon this part of the case is, whether, at any subsequent stage of the trial, the defect in the Plaintiff's proof was supplied. All the evidence given, having any such tendency, was the answer of one of the Defendants to the question: " Has it not occurred sometimes in your store, that your clerks have arrested persons suspected of having purloined goods ? " To which the witness answered: " I believe it is very likely ; " and to the further question : " Whether done by authority of the foreman ? " To which he answered: " Not by my authority as one of the firm. I never gave any such instructions; " and his answer to a further question, " that he had never witnessed such an occurrence." This was clearly insufficient to charge the Defendants.

The judgment must be reversed upon the exception to the Judge's refusal to grant the motion to dismiss the complaint. The other exceptions it is unnecessary to examine.

Judgment reversed.        JOEL TIFFANY,
                                                State Reporter.