\* ANN MALLACH, RESPONDENT, v. EDWARD A. RIDLEY AND OTHERS, APPELLANTS.

*Liability of the proprietor of a store for the act of an employee in directing the arrest of a person suspected of theft — the proprietor is not liable for an unauthorized act, although the employee supposed he was authorized to do it.*

Upon the trial of this action, brought to recover damages for the illegal arrest and imprisonment of the plaintiff, it appeared that she had been arrested by a police officer, who, after having been informed by a floor-walker employed by the defendant that a salesman had seen the plaintiff take and conceal a corset, followed her and, after seeing such actions on her part as justified suspicion, arrested her and took her back to the store for examination. The defendants were sued as the proprietors of the store, and it was not claimed that they had any personal connection with the transaction. Graft; the floor-walker, testified that his business and duty were to protect the stock in the section assigned to him, to maintain order, to see that customers were properly waited upon, and to direct customers; that he meant by protecting the stock to see that the hands behind the counter were keeping the stock clean, and not to protect it from being stolen; that it was not his duty, and that he had no authority from the defendants to arrest or order the arrest or detention of any person on suspicion of having stolen; that his duty in such a case was to report it to the man in charge of the floor or to the superintendent; that when he himself saw a person in the act of theft he had a right to arrest or order a policeman to arrest. The judge charged, upon the question of Graft's authority, that if he "in what he *supposed* to be the exercise of his duty in protecting those goods, did an act which has entailed a loss or damage upon this plaintiff, the defendants are responsible for that act; that they have placed him there to do that act, and for any act of his in doing what he *supposed* was his duty in detecting thefts, or in suppressing theft, or in arresting thieves, if he was mistaken in his judgment in that matter, the defendants are responsible."

*Held,* that the judge erred in so charging, as it made the liability of the defendants depend upon the supposition of the servant as to the extent of his authority, instead of upon the authority actually conferred or implied.

*Mali* v. *Lord* (39 N. Y., 381), followed.

APPEAL from a judgment entered on a verdict and from an order denying a motion for a new trial, made upon the minutes of the justice before whom the action was tried, on the ground that the verdict was against the weight of evidence and that the damages were excessive.

\* Decided May 8, 1885.

This action was brought to recover the damages resulting from an illegal arrest and imprisonment of the plaintiff, made by a policeman pursuant to the direction of one of the defendants' employees. The justice presiding at the first trial directed a verdict to be rendered in favor of the plaintiff. On appeal to the General Term a new trial was granted, upon the ground that the question as whether the defendants authorized the arrest, and whether the same was within the scope of the powers and duties which they had conferred upon the employee should have been left to the jury.

*E. P. Wilder*, for the appellant.

*Kurzman & Yeaman*, for the respondent.

DAVIS, P. J.:

There is nothing in the complaint in this action to justify the plaintiff's counsel in claiming that the action is brought for malicious prosecution. It is simply an action for an illegal arrest and imprisonment of the plaintiff upon suspicion that she had been guilty of a larceny.

The arrest of the plaintiff in this case was made by a police officer under circumstances that seem to have justified his action, as he was informed that one of the salesmen in the defendant's store had seen the plaintiff take and conceal a corset, whereupon he followed her and saw such actions on her part as justified suspicion, and thereupon arrested and took her back to the store for examination. It is not claimed that either of the defendants in the action had any personal connection with the transaction. They are sued solely as proprietors of the store, on the ground of their responsibility for the acts of their servants. The judge who tried the case at circuit, in his charge, correctly said to the jury: In the first place, no one claims here that the defendants were personally present, or had anything to do with this transaction; that they had any motive in it, either good or bad. The question, therefore, was and is, to what extent are the defendants responsible for the acts of their employee? One Graft, who is described as having been a floor-walker in the store, was the person who informed the officer that he had been told by the salesman that the plaintiff had stolen

a corset, and requested him to follow and arrest her, and, when he returned to the store with the woman, had directed the officer to take her up stairs and search her, and had accompanied her to a private room for that purpose and was present at the search. The case largely depended upon the question whether Graft, the floor-walker, was acting within the scope of any authority conferred upon him by the defendants. Graft testified that he was a floor-walker in the employ of the defendants; that his business and duty were to protect the stock in the section assigned to him, to maintain order, to see that customers are properly waited upon, and to direct customers; that he meant, by protecting the stock, to see that the hands behind the counter were keeping the stock clean, and not to protect it from being stolen; that it was not his duty, and that he had no authority from the defendants to arrest or order the arrest or detention of any person on suspicion of having stolen; that his duty in a case where a person is acting suspiciously is to report it to the man in charge of the floor, or, if the superintendent was around, to report to him or send a message; that when he saw a person in the act of theft, he had a right to arrest or order a police-man to arrest, but that when a person was suspected of having stolen, that was a different thing; and that he had distinct orders from the general superintendent in reference to these two matters. The testimony of this witness showed, in short, that he was not authorized by the defendants to arrest or cause any person to be arrested upon suspicion, but that his duty in part was to protect the goods in the manner above described, and also against thefts which he himself saw committed.

In respect to Graft's authority the judge charged as follows: "This brings us to the question of the authority conferred on Graft. What was it? What is it admitted to be? To protect those goods. Now, I shall charge you, as a matter of law, that if that man Graft, in what he supposed to be the exercise of his duty in protecting these goods, did an act which has entailed a loss or damage upon this plaintiff, the defendants are responsible for that act; that they have placed him there to do that act, and for any act of his in doing what he supposed was his duty in detecting thefts, or in suppressing thefts, or in arresting thieves, if he was mistaken in his judgment in that matter, the defendants are responsible.

They are not only responsible for that, but for any excess of authority, or any excess in his action in regard to that."

This part of the charge was excepted to by the counsel for the defendant, and the exception, we think, was well taken. The law governing such cases is laid down in *Mali* v. *Lord* (39 N. Y., 381), a case quite similar to the present in its facts. In that case the court say, after considering several authorities: "Applying these principles to the present case the inquiry is whether a merchant by employing a clerk to sell goods for him in his absence, or a superintendent to take the general charge and management of his business at a particular store, thereby confers authority upon such clerk or superintendent to arrest, detain and search any one suspected of having stolen and secreted about his person any of the goods kept in such store. If he does, he is responsible for such acts of the clerk or superintendent. If not, then such acts are not within the scope of the authority delegated to the superintendent, and the employer is not responsible therefor, for the reason that, while in their performance, the servant is not engaged in the business of the master any more than in committing an assault upon or slandering a customer. In examining this question it must be assumed that by the employment the master confers upon the servant the right to do all necessary and proper acts for the protection and preservation of his property, to protect it against thieves and marauders, and that the servant owes the duty so to protect it to his employer. But this does not include the power in question. It cannot be presumed that a master, by intrusting a servant with his property and conferring power upon him to transact his business, thereby authorizes him to do any act for its protection that he could not lawfully do himself if present. The master would not, if present, be justified in arresting, detaining and searching a person upon suspicion, however strong, of having stolen his goods and secreted them upon his person. The authority of the defendants to the superintendent could not, therefore, be implied from his employment. The act was not done in the business of the defendants, and they were not, as masters, responsible therefor."

The rule thus laid down is undoubtedly the law of such cases, and it was, therefore, not correct for the court to charge the jury that the bare fact that Graft was employed to protect the goods of the

defendants authorized him to arrest the plaintiff on suspicion and cause her to be searched to ascertain whether she had stolen goods about her person. The court went even further than this, and charged that if Graft, "in doing what he supposed to be the exercise of his duty in protecting these goods, did an act which entailed loss or damage upon the plaintiff, the defendants are responsible for that act, and for any act of his, in doing what he supposed was his duty in detecting thefts or suppressing thefts, or in arresting thieves. If he was mistaken in his judgment in that matter the defendants are responsible. They are not only responsible for that, but for any excess of authority, or any excess of his action in regard to that." This was in effect making the mere supposition of Graft, as to the extent of his duty in protecting the goods of the defendants, the measure of his authority to act as the agent of the defendants and to make them liable for any or all excesses that he might commit based upon his own supposition of duty. This was carrying the liability of the defendants, for the acts of their servants, beyond that imposed by any established rule of law. Under it, if Graft supposed he had the right to assault and beat, or even shoot down any person whom he suspected of stealing his employer's goods, the employers would be liable for the act, because of his mistaken supposition. That the court meant that its language should be understood by the jury as going that length, is shown by a subsequent portion of the charge, in which, after speaking of Graft's telling the officer that he had been informed that the plaintiff had stolen a corset, he said : "Now, if, in doing that, he supposed he was acting within the scope of his authority, and it was entirely within his duties, these defendants are liable for the act, if it was wrongful in its nature."

The case was, therefore, submitted to the jury substantially upon the proposition that whatever wrongful act a servant (employed to perform particular duties) does, charges the employer if the servant supposes it to be within the scope of his authority, thus making the liability depend upon the supposition of the servant as to the extent of his authority, rather than upon the authority actually conferred or implied. We do not understand this to be the law. Under the charge the jury might well have found that Graft had no authority from the defendants to arrest the plaintiff on suspicion, or to cause

hei to be arrested and searched, and that such acts were altogether outside the scope of his duties, and yet, because he supposed he had authority the defendants were chargeable with all he did. The jury were probably misled from the consideration of the real question, as laid down by the Court of Appeals in the case above cited, to an erroneous view of the law to which the facts as found by them were to be applied. For this error we see no other course than to reverse the judgment and direct a new trial.

The motion for a new trial, on the ground of excessive damages, ought, we think, to have been granted. On the former trial a verdict for $800 was rendered. On the present trial the verdict was for $5,000. It is conceded that the defendants had no participation in the alleged wrong, and knew nothing about it, yet a verdict was rendered against them in a sum which seems to us strongly to show that the jury must have been governed by passion, prejudice, or other exciting cause outside the real merits of the case. It is not necessary, however, to pursue this question, inasmuch as a new trial must be granted for the error of law above considered.

The judgment and order should be reversed and a new trial granted, with costs to abide the event.

DANIELS, J.:

I agree that the court misdirected the jury as to the principle of liability, and that their verdict was excessive, and that the judgment should for these reasons be reversed, the verdict set aside and a new trial ordered.

BRADY, J.:

The learned justice in the court below seems to have erred in stating the law governing cases like this laid down by the Court of Appeals, and there must be a new trial. In this I concur, but in this only.

Judgment and order reversed, new trial ordered, costs to abide event.