SARAH E. KNOWLES, Respondent, v. BULLENE, MOORE, EMORY & COMPANY, Appellants.

Kansas City Court of Appeals, May 17, 1897.

1. **Master and Servant:** SCOPE OF AGENCY: PROTECTION OF MASTER'S GOODS: POWER TO ARREST. The proprietor of a large department store is liable in an action for the illegal arrest and false imprisonment of a person arrested by his floorwalker for pilfering lace from a counter in the presence of a salesman, though the proprietor is at the time absent and has instructed his servants not to arrest unless they themselves witnessed the act, since said act is within the scope of the servant's authority to protect and recapture the goods of the master.

2. ———: ———: ———: ———. The master, if present, would have the right to arrest the thief and recapture his goods, and where the servant in his stead was obliged to determine the fact as to whether the case was a proper one for action or not, and his act was intended to be for his master's benefit, such act becomes the master's act, and, if wrongful, the master is liable therefor.

ON MOTION FOR REHEARING.

3. ———: ———: ———: ———: ALLEGATA ET PROBATA. Where a salesman reports to a floorwalker, immediately on seeing the act, that the plaintiff had purloined lace and had it in her pocket, and the floorwalker thereupon arrests plaintiff and takes her to the superintendent's office who searches for the lace, which is subsequently found on the counter, the right of arrest with a view to recapture the property was exercised by the one who supposed he saw the pilfer, though he called the other party to his assistance; and, if the arrest was wrongful, the proprietor must answer. And the fact that the petition counts on the action of the floorwalker only in making the arrest, and the proof shows he did not see the act but that he made the arrest at the instigation and in the aid of his fellow employee who did see the act, there is no failure of proof.

4. ———. ———. ———. ———. The employees in a department store have authority to protect the goods, and if, in attempting to do so, they make a mistake to the injury of a stranger, the principals are liable.

*Appeal from the Jackson Circuit Court.*—HON. E. L. SCARRITT, Judge.

AFFIRMED.

*R. E. Ball* for appellants.

(1) The instructions for plaintiff, and defendants' instruction 2, as modified and given by the court, permitted and required the jury to find express authority from the firm to the floorwalker to arrest on information, of which authority there was no proof, and it was affirmatively disproven. This was error. *Mfg. Co. v. Ball*, 43 Mo. App. 504. (2) The modification by the court of defendants' instruction 6, telling the jury that they could not find that there was no arrest unless plaintiff went to the office "of her own volition" and that it was not enough that she consented to go on Bryan's request, was particularly harmful under the facts of this case and was erroneous as an abstract proposition. *Miller v. Ashcraft*, 32 S. W.

Rep. (Ky.) 1085. (3) The issues submitted to the jury did not (if they found for defendants) involve the branding of plaintiff as a thief, as persistently urged by counsel, and the allowance of such comment, without rebuke, was highly prejudicial and wrong. *McDonald v. Cash*, 45 Mo. App. 66, 79; *Wilburn v. R. R.*, 48 Mo. App. 224, 230; *Evans v. Trenton*, 112 Mo. 390, 404. (4) There being no express authority to arrest on information, implied authority to do so could not be held, because the purpose and scope of the floorwalker's employment did not involve doing police duty, did not vest any discretion in him to commit trespass, by assault or unlawful arrest against any person in the interest of the firm, and his instructions, in accordance with the law, forbade him to do any such thing. Wood on Master and Servant [2 Ed.], p. 524, sec. 279; *Id.*, p. 539, sec. 286; *Poulton v. R. R.*, 2 Q. B. 534; *Allen v. R. R.*, 6 Q. B. 65; *Farber v. R. R.*, 32 Mo. App. 381, 382; *Jones v. Packet Co.*, 43 Mo. App. 410, *et seq.*; *McKeon v. R. R.*, 42 Mo. 79, 88; *Jackson v. R. R.*, 87 Mo. 422, 430; *Walker v. R. R.*, 121 Mo. 575, 584; *Govaski v. Downey*, 100 Mich. 429, 435; *Travis v. Ins. Co.*, 86 Mich. 288; *Flora v. Russell*, 37 N. E. Rep. (Ind.) 593; *Murrey v. Kelso*, 38 Pac. Rep. (Wash.) 879; *Mallach v. Ridley*, 43 Hun. 336; *Mali v. Lord*, 39 N. Y. 381; *Isaacs v. R. R.*, 47 N. Y. 122, 127; *Cosgrove v. Ogden*, 49 N. Y. 255, 258; *Rounds v. R. R.*, 64 N. Y. 129, 135; *Mott v. Ice Co.*, 73 N. Y. 543, 548; *Palmeri v. R. R.*, 133 N. Y. 261, 266.

*Lyman & Brown* for respondent.

(1) The instructions speak for themselves and we think, in the first place, that they do not require the jury to find express authority from the firm to arrest on information, but only upon information of an em-

ployee of the firm.   There is a wide difference between arresting a person upon suspicion or information of people outside of, and not connected with, the firm and upon information by one of the employees.   The evidence of defendants themselves proves that when a person was seen by an employee of the firm to steal property of defendants, the person was to be detained or "apprehended" and "the property recovered." Appellants' counsel, by speaking generally of arrest on "suspicion" and on "information," evades the fact that defendants authorized detention and arrest when an employee had seen the person arrested in the act of committing the theft, and the clerk, Miss Wiedemann, testified that she saw respondent take the lace and put it in her pocket.   (2) Defendants' instruction number 2 was modified by the court by adding the words in italics, as shown in appellant's brief, the words being, "or authorized and directed the arrest and detention of persons upon information of any employee that such person had stolen property belonging to the defendants."   Certainly the words added to the instruction are justified by the testimony of Thayer.   The clerk, Wiedemann, claimed to have seen the theft; informed the floorwalker, and he, in unison with the clerk, represented the firm in detaining the respondent and endeavoring to recover from her the property for the firm.   We fail to see that the case of *Mfg. Co. v. Ball*, 43 Mo. App. 504, has any bearing upon the case at bar, for it certainly can not be said that facts were not shown in evidence upon which to base the instruction. (3) As to appellants' objection to the language used by respondent's counsel in addressing the jury, we will content ourselves with arguing the point without submitting authorities.  The authorities cited by appellants' counsel do not bear upon the case, because the circumstances are so very much different.   (4) The fourth

point made by appellants' counsel is not sustained by the authorities that he has cited, nor do we think such a position can be maintained in reason or justice. It certainly was within the scope of the floorwalker's employment, as well as of the clerks, and of the superintendents to "apprehend" or arrest any person seen by one of them stealing the property of their employers, and to recover the property for their employers. Besides, the testimony shows conclusively that they had express authority from their employers to arrest when a person was seen in the act of stealing. We wish to call special attention to one decision referred to by appellants, the case of *Mallach v. Ridley*, 43 Hun, 336; s. c., 9 N. Y. S. 922. This case, as well as the one of *Mali v. Lord*, 39 N. Y. 381 (cited by appellants) is referred to and the subject reviewed in notes in Lawyers' Reports Annotated, book 14, page 794. We refer to this book because it is the most accessible for showing the final result of the case of *Mallach v. Ridley*, the case not being reported on its final appeal in 47 Hun, page 638, but merely noted as being affirmed in accordance with the final judgment. *Mallach v. Ridley*, 9 N. Y. S. 922; s. c., 47 Hun, 638; *Clark v. Starin*, 47 Hun, 345; *Mfg. Co. v. Boyce*, 36 Kan. 350; *Staples v. Schmid*, 18 R. I. Sup. Ct. 229; same case in Lawyers' Reports Annotated, page 824, decision rendered February 25, 1893; same case reported in 26 Atl. Rep. 193; *Palmeri v. R'y*, 133 N. Y. 261; same case reported in 30 N. E. Rep. 1001. Even disobedience of masters' orders or instructions is no defense, if the act of the employee be within the scope of his employment, and whether the act is within scope of employment is a question for the jury. *Tierney v. R'y*, 32 N. Y. S. 627; same case reported in 85 Hun, 146; *Cable Co. v. Brantley*, 18 S. Rep. 321; *R'y v. Bowlin*, 32 S. W. Rep. 918.

GILL, J.—This is an action for an illegal arrest and false imprisonment alleged to have been committed against the plaintiff by defendant's employees in charge of one floor of their large department store at Kansas City.   Plaintiff's evidence was to the effect that in the afternoon of April 29, 1892, she visited defendants' store, and while there, waiting to meet a lady friend, she was arrested by the floorwalker, taken against her will into the superintendent's office, and there detained on the charge of stealing a piece of lace; that she was forced to take off her coat and turn the pockets wrong side out; that no such article was discovered, but that the lace was then found on the counter from which they falsely accused her of taking it.   Among other witnesses, the defendants introduced a young lady clerk who attended the lace counter, and who testified that she saw the plaintiff take the piece of lace from the stock and conceal it in her pocket; that the witness went at once to the floorwalker, a short distance away, and reported the theft and that said floorwalker at once took the plaintiff to the superintendent's office, where after an investigation and search the plaintiff was allowed to go.   The jury found as a fact that plaintiff did not take the lace, that she was falsely accused, that she was arrested and detained against her will, and awarded her damages in the sum of $500, and from a judgment in accordance therewith defendants appealed.

I.   The main question raised on this appeal is—admitting the plaintiff to have been wrongfully used and to have been falsely charged, illegally detained and searched—whether or not defendants are responsible for the damages, it being conceded that they were not present and did not specifically order the arrest, and more than this that the employees were under instruc-

tions not to arrest except they saw the offense committed.

In our opinion the defendants are liable, notwithstanding their absence at the time and even conceding it to be true that the employees were told not to arrest and detain persons charged with theft unless such agents themselves witnessed the act. We say this, too, in full recognition of the rule that the master is not responsible for the wrongful acts of the servant unless such acts are done in the service of the master and within the scope of the servant's employment. It seems to us too plain for argument, that this arrest and detention was clearly within the scope of the employment of the defendants' employees who arrested and detained Mrs. Knowles. This floorwalker, superintendent, as well as the lady clerk, were intrusted with the custody and care of the defendant's goods; and it was their duty, while so intrusted, to protect them from theft or spoliation. These servants were, within their respective spheres, the agents and representatives of the defendants—empowered, as the nature of their employment implied, to do everything that was reasonably necessary to protect the property in their keeping, just as the principals could if present. To that end the clerk, floorwalker, and superintendent were authorized to arrest and detain persons charged with theft— not for the purpose of criminal punishment but to recover the master's goods. This authority was necessarily implied from the nature of the employment and was within the line of the master's service. It may be that such clerks or employees will at times act indiscreetly or with bad judgment, will carelessly charge theft and arrest persons not guilty, yet who shall suffer for this indiscretion or misjudgment? Surely not the inoffensive customer, but rather the principal who

*Margin note: MASTER and servant: scope of agency: protection of master's goods: power to arrest.*

placed the agent there as his representative. This is the law as declared in Wood on Master and Servant, section 288: "When a person puts another in his place to do certain acts in his absence, he necessarily leaves him to determine for himself, according to his judgment and discretion, according to circumstances and exigencies that may arise, when and how the act is to be done, and trusts him for its proper execution; consequently he is answerable for the wrongful execution of the act either in the manner or *occasion of doing it*, provided it is done *bona fide* in the prosecution of his business, and within the scope of the servant's express or implied authority, and not from mere caprice or wantonness, and wholly outside the duties imposed upon him by the master." As said by Mr. Justice BLACKBURN in the *Poulton* case, 2 Q. B. 534: "There can be no question that where a railway company or any other body (for it does not matter whether it is a railway company or not) have upon the spot a person acting as their agent, that is evidence to go to the jury that that person has authority from them to do all those things on their behalf which are right and proper in the exigencies of their business—all such things as somebody must make up his mind, on behalf of the company, whether they shall be done or not; and the fact that the company are absent, and the person is there to manage their affairs, is *prima facie* evidence that he was clothed with authority to do all that was right and proper; and if he happens to make a mistake, or commits an excess, while acting within the scope of his authority, his employers are responsible for it."

These principles are applicable to the case at bar. These servants or agents of the defendants were put in charge of goods held for sale; their primary duty of course was to make sales, but they were likewise relied

on to protect the goods from pilfering, and, to do this, were authorized, as the principals themselves might have done if present, to arrest and search parties for the purpose of recovering stolen goods. If, however, in the performance of this duty the defendants' employees mistook the occasion for it and arrested and searched an innocent party, still the employers are responsible. It would be wrong and contrary to legal principles to visit the mistakes of these agents upon third parties, where as here such agents were acting within the general scope of the business intrusted to them by the principals.

Neither will this liability be shifted and defendants relieved, because, as testified by defendant Thayer, he cautioned his employees to make no arrests except in cases where they actually saw the theft committed. Innocent third parties can not be affected by these instructions which were disobeyed by the defendants' servants. *Garretzen v. Duenckel*, 50 Mo. 104; *Farber v. Railway*, 32 Mo. App. 378; *Jones v. Packet Co.*, 43 Mo. App. 398. In these and numerous other cases that might be cited, it is in effect held that the master will be liable where the act was done by the servant in the scope of his employment, and to accomplish the purpose of that employment, although it was done contrary to the express orders of the master. "The test of a master's responsibility for the act of his servant is, whether the act was done in the prosecution of the master's business, not whether it was done in accordance with the instructions of the master to the servant." *Cosgrove v. Ogden*, 49 N. Y. 255; *Rounds v. Railroad*, 64 N. Y. 129; *Mfg. Co. v. Boyce*, 36 Kan. 350.

It seems to be the position of defendants' counsel, that as the defendants could not have lawfully arrested the plaintiff (she being innocent) then their

agents could have no such authority.   As the basis of this contention reliance is had on *Mali v. Lord*, 39 N. Y. 381, where in course of the opinion the court says: "It can not be presumed that a master by intrusting his servant with his property, and conferring power upon him to transact his business, thereby authorizes him to do any act for its protection that he could not lawfully do himself if present.   The master would not, if present, be justified in arresting, detaining and searching a person upon suspicion, however strong, of having stolen his goods and secreted them upon his person.   The authority of the defendants to the superintendent could not therefore be implied from his employment."

It must be conceded that the case just cited is authority for defendants' contention.   But it seems to us that the New York court in the case referred to misapplied the principle stated in the foregoing quotation.   When it is said that no authority will be implied in the agent to do an act in defense of the principal's property, which act the principal himself could not lawfully do if present, it must be understood as having relation rather to the *character* of the act than as to what the principal might have lawfully done under the particular circumstances of the case.   To illustrate: The master would have no authority, if present, to shoot and kill one detected in stealing his goods, and so under the rule, correctly applied, no such authority could be implied in the servant.   But the master may lawfully arrest and detain the thief and thereby force him to give up the stolen goods, and authority therefor may be impliedly given to the servant or agent, standing in place of the principal.   In a well considered case from Rhode Island, *Mali v. Lord* was thus criticised: "Neither does this principle forbid the court to imply the responsibility of the master for the wrongful or

excessive exercise of the servant's discretion in a case where the act done would have been lawful if the supposed circumstances had been real. This limitation seems to have been ignored in *Mali v. Lord*, 39 N. Y. 381. * * * It is quite true that the master would have had no right to arrest and search an innocent person; but it is equally true that he would have had the right to detain a thief, and to recapture his property from him. The case, therefore, was one where the act, aside from any excessive force, might be lawful or unlawful according to whether the supposed circumstances were real or unreal. The servant was left in a situation where he was obliged to determine the fact, and where his duty to his master depended upon his decision. The decision was his, as the substitute of the master, and the act was one intended by him to be for his master's benefit, and which his duty required if the facts were as supposed; hence as to third persons, it was the master's act. The criterion of the master's liability can never be whether the act would have been lawful for the master to have done in the circumstances as they actually existed." *Staples v. Schmid*, 26 Atl. Rep. 193.

Other points mentioned in brief—relating to the court's modification of instructions, and the argument of plaintiff's counsel to the jury—we have considered and find in none of them any substantial matter for complaint. The case was fairly tried and submitted to the jury on proper instructions. The judgment will therefore be affirmed. All concur.

### ON MOTION FOR REHEARING.

ELLISON, J.—Counsel urges that the court fails to give effect to his contention that there can not be implied authority given to an agent to do an act which the principal could not lawfully do if present. His

point is this: that there can be no lawful arrest (even of a guilty party) without a warrant except the person making the arrest saw the act committed constituting the offense. And that therefore, since defendants (not having seen the act) could not have lawfully arrested plaintiff, there could be no implied authority to arrest from them to the floorwalker who did not see the act.

In my opinion it is a false assumption to say that the act was unseen and merely suspected. In this respect the case is unlike *Mali v. Lord*, 39 N. Y. 381, for that case was one of mere suspicion. While it is strictly true that the floorwalker did not see the act, yet defendants' saleswoman at the counter from which the lace was supposed to have been taken, did see the act. The floorwalker was in sight, immediately at hand, the saleswoman stepped up to him and informed him of what had just taken place and he immediately took the plaintiff to the superintendent's office. The arrest was the act of either or both of these agents of defendants. It was as much the act of the saleswoman as of the floorwalker. It was no more than if she herself had taken hold of plaintiff and said to the floorwalker, "I have just seen this woman steal a piece of lace and put it in her pocket, take her to the superintendent." The arrest was made on view (though a mistaken one) and not on suspicion. It is conceded by instructions (asked by defendants and in this respect not modified) that defendants' employees, for the *purpose of protecting* defendants' goods, had the right, as such employees, to arrest any one seen stealing them. In this case that right was exercised by the party who supposed she saw the act, aided by another employee who was present and who, though not seeing the act himself, was called upon by the party who supposed she did see it, and informed him that it had then just been committed.

*—: —: —: —: allegata et probata.*

It may be suggested that plaintiff's petition grounds the case on the arrest having been made by the floorwalker only. We do not believe that ought to affect the controversy at this stage. It must be remembered that neither the saleswoman nor floorwalker, without special authority, could act for defendants in the matter of making arrests for any other purpose than protecting or securing the property of defendants. They could not act for defendants on the mere matter of vindicating the law and punishing offenders. ·Cameron v. Express Co., 48 Mo. App. 99. So then when it is charged that the floorwalker, who did not see the act, made the arrest and the proof showed that he did so at the instigation and in aid of a fellow employee who did at that moment see the act, it is not a case of failure of proof.

But to take defendants on their own ground as stated in their motion we yet can see no reason for qualifying what has been said in the foregoing opinion. The employees of defendants had authority to protect defendants' goods, and in attempting to do so they made a mistake to the injury and humiliation of the plaintiff. They were engaged in the course of their service and employment and their principals are liable for the manner of executing such service. A railway conductor has no authority to put off his train any orderly passenger who has a ticket, yet if he does do so he is doing an act relating to the master's service where he has been placed by the master for the purpose of deciding when such an act is proper and necessary. If he does put off such a passenger, it is an unauthorized act, yet no one would say the master was not liable for such act. Motion overruled. SMITH, P. J., concurs; GILL, J., absent.