### DUPRE v. CHILDS et al.

(Supreme Court, Appellate Division, First Department. June 8, 1900.)

1. PRINCIPAL AND AGENT—FALSE IMPRISONMENT—SCOPE OF AUTHORITY—LIABILITY OF PRINCIPAL.

　　The action of the manager of a restaurant in following plaintiff into the street and causing his arrest because he had entered the restaurant and sat down at a table, and passed out without stopping at the cashier's desk, in violation of a rule of the proprietors, was within the scope of his authority, for which the proprietors were liable, although his instructions were not to leave the restaurant.

2. SAME—INSTRUCTION—REQUEST.

　　No error can be urged, on appeal, for not submitting the question of an agent's authority to the jury, where no request was made for such an instruction at the trial.

3. SAME—INSTRUCTION—AGENT'S AUTHORITY.

　　Where defendants admitted that the alleged manager of their restaurant had control of the business, an instruction that, if such manager caused the arrest of the plaintiff because he had violated a rule of the restaurant, the defendants were liable for the consequences of the arrest, was proper.

4. SAME—EVIDENCE—EXCLUSION.

　　Error in the exclusion of the police sergeant's blotter in an action for wrongful arrest is harmless, where the testimony of the sergeant showed the same facts which would have been shown by the blotter.

5. APPEAL—FINDINGS OF FACT.

　　Findings of a jury based on conflicting evidence are conclusive on appeal.

　　Ingraham and McLaughlin, JJ., dissenting.

Appeal from trial term, New York county.

Action by Ovide Dupre against Samuel S. Childs and another. From a judgment in favor of plaintiff, defendants appeal.   Affirmed.

Argued before PATTERSON, P. J., and HATCH, RUMSEY, Mc-LAUGHLIN, and INGRAHAM, JJ. .

Albridge C. Smith, for appellants.

Arthur C. Palmer, for respondent.

RUMSEY, J.   The defendants are keepers of a restaurant at No. 815 Broadway, in the city of New York; and one Tullis was on the 6th of May, 1898, the manager of the restaurant, and had general supervision of the place.   On the morning of that day the plaintiff went into the restaurant, with the intention of getting his breakfast. He sat down at a table, but after he had done so, and before he had given his order, something occurred which caused him to change his mind, and he got up and left the restaurant.   He did not stop at the cashier's desk as he went out.   There is a rule in the restaurant that every one who passes the cashier's desk must stop, whether he has a check or not, although no such rule was posted or displayed so that customers could become aware of it.   The plaintiff, without stopping, went out of the restaurant, although he was called upon several times as he went along to stop at the desk, but he paid no attention to the calls.   Tullis followed him, and, having overtaken him 10 or 12 feet from the entrance, stopped him by grasping his right shoulder.   The plaintiff testifies that up to that time he had heard no one speak to him.   There is some conflict in the testimony of the plaintiff and the other witnesses as to what occurred after Tullis stopped the plaintiff on the street, but as the question was presented fairly to the jury, and they found for the plaintiff, we must assume that all disputed questions were decided in his favor.   The plaintiff testifies that when he was stopped he was told he had broken a rule of the restaurant, by passing the cashier's desk without stopping, and that he must go back, and that he refused to do so.   Tullis thereupon procured him to be arrested, and he was taken to the station house, and the charge made that he had gone into the restaurant, and then had left without stopping at the cashier's desk. There is no doubt that when Tullis stopped the plaintiff outside of the entrance, on the sidewalk, he asked him whether he had been served and whether he had a check; and not only does the plaintiff swear to that, but Tullis himself so testifies.   Just whether Tullis, at the station house, charged the plaintiff with having violated a rule of the restaurant, in passing the cashier's desk without stopping, is not quite clear from the testimony of Tullis.   He admits, substantially, that there was such a rule, and that it was a subject of conversation at the station house; and, as was said above, the story of the plaintiff was adopted by the jury, and must be assumed to be true.   We have, then, these facts:  Tullis was the general manager and had the supervision of the defendant's restaurant.   The plaintiff, having gone into the restaurant, but not having been served, and not being indebted to the defendants for anything, started to leave the

place without stopping at the cashier's desk. Tullis, supposing that he had been served. and had not paid, immediately went after him, and caught up with him a few steps from the entrance of the restaurant, and spoke to him about his not having stopped at the desk, and, as a result of that conversation, procured him to be arrested; and in accordance with the request the plaintiff was taken to the station house, and immediately discharged. There arose a natural inference that Tullis was acting in the interest of defendants, whose representative he was, and in an attempt to obtain from the plaintiff payment of his check, if he had one. The only question upon that state of facts was whether the jury might properly find that Tullis, in acting as he did, was pursuing an authority which was implied from the nature of his duties, and which was vested in him by the defendants; and, if he was, there can be no doubt that the defendants are liable for his act.

It is said that the defendants are not liable for what was done outside of the restaurant, because there was a general rule that the manager should not go out of the restaurant until he had been relieved by some one else. He was there as the alter ego of the defendants, and to do precisely those things which the defendants might have done and would do if present; and if, in the performance of those duties, it became necessary for him, in order to collect a bill, to step outside the restaurant, and to procure payment from the person who had not paid his bill inside, there is no doubt that he might not only properly do it, but was expected to do it. The rule that he should not leave the premises was made, undoubtedly, to require him to stay in charge of the restaurant until he was relieved; but it was not intended, nor could it be intended, to restrain him from doing on the steps of the restaurant just what he might do inside, by way of collecting a bill. The rule is that for the acts of the servant within the general scope of his employment, while engaged in his master's business, and done with a view to the furtherance of that business and the master's interest, the master will be responsible, whether the act be done negligently, wantonly, or even willfully. In general terms, if the servant misconducts himself in the course of his employment, his acts are the acts of the master, who must answer for them. Even if those acts be willful, although it has been intimated in several cases that for such acts the master will not be responsible, yet these intimations are subject to the material qualification that the acts designated as willful are not done in the course of the service, and were not such as the servant intended and believed to be for the interest of the master. In such case the master would not be excused from liability by reason of the quality of the act. Mott v. Ice Co., 73 N. Y. 543–547. The rule laid down in this case has been invariably followed. Montgomery v. Sartirane, 16 App. Div. 95, 44 N. Y. Supp. 1066; Quinn v. Power, 87 N. Y. 535; Rounds v. Railroad Co., 64 N. Y. 129; Mallach v. Ridley, 47 Hun, 638; O'Connell v. Samuel, 81 Hun, 357, 30 N. Y. Supp. 889; Palmeri v. Railway Co., 133 N. Y. 261, 30 N. E. 1001, 16 L. R. A. 136. Although the case of Mali v. Lord, 39 N. Y. 381, was undoubtedly well decided upon the facts there made to appear, it cannot be said, I

think, now to be an accurate statement of the law as to the responsibility of the master for the wrongful act of his servant. The later cases which are cited above have laid down the rule in such different terms that the case of Mali v. Lord must be assumed to have been considerably limited. In that case it was quite clear that the salesman had no authority to do any such act as he did do, and the case was decided, as was said in the case of Palmeri v. Railway Co., supra, upon the ground that the general employment of the salesman could not warrant such an act. But in this case Tullis was more than a salesman. He was the general manager and superintendent of the defendants. He was in general charge of their business, and from that fact it must be assumed that he had all the powers in the management of this restaurant which the defendants themselves would have had, had they been there; and in this aspect the case is entirely different from the case of Mali v. Lord.

It is said that the question of the authority of Tullis was not submitted to the jury, but that the case was submitted to them upon a false issue, not raised by the pleadings. But, if that were so, no objection was made to it upon the part of the defendants, either upon the trial or here. They did not request that the question of the authority of Tullis be submitted to the jury. Indeed, there can be no question as to that fact; it being conceded by defendants themselves that he was there as general manager, and that he had all the authority which they themselves would have had. It is quite true that an exception was taken to that part of the charge which instructed the jury that, if the plaintiff was arrested because he had violated the regulations of the restaurant under the circumstances disclosed by the evidence, then the defendants were liable. But when it appeared, as it did by the undisputed evidence, that Tullis was there in control of the defendants' business, the court correctly charged that, if he caused the arrest to be made in an effort to compel the performance by a customer of a rule which the defendants had made for the protection of their business, the plaintiff was entitled to a verdict. The exception to the exclusion of the sergeant's blotter is of no importance, whether it might properly have been admitted in evidence or not, because it appears in the sergeant's testimony that the facts which he testified to were substantially the same facts that appeared upon the blotter, so the defendants had the benefit of those facts.

The judgment and order must therefore be affirmed, with costs.

PATTERSON, P. J., and HATCH, J., concur.

INGRAHAM, J. I do not concur in the affirmance of this judgment. There can be no dispute but that plaintiff was illegally arrested, and the only question is whether the defendants are liable for the act of their manager in causing the arrest. There is no evidence that the defendants ever authorized Tullis to procure the arrest of any one, and no rule in force at the restaurant was proved which gave Tullis authority to cause the arrest to be made; nor can I find any evidence of a rule that any one who passed the cashier's

desk must stop, whether he had a check or not. Childs, one of the defendants, and Van Fleet, the cashier, swear there was no such rule. There was nothing which would justify a finding that Tullis, in causing the arrest of the plaintiff, was acting within the scope of his employment, or under any authority, either express or implied, conferred upon him by the defendants. While it is true that the restaurant was under the management of Tullis, this arrest took place, not in the restaurant, but on the street; and assuming that the defendants conferred upon the manager authority to do such acts as were necessary to preserve order in the restaurant, or to prevent persons from leaving it without paying what was owing, there was no implied authority for Tullis to follow a customer into the street, and, after an altercation with him there, to procure his arrest. The case of Mali v. Lord, 39 N. Y. 381, has been considered as settling the extent of the implied authority conferred by the master upon the superintendent or manager of a store in relation to causing the arrest of its customers. It was there held that:

"By the employment the master confers upon the servant the right to do all necessary and proper acts for the protection and preservation of his property, to protect it against thieves and marauders; and the servant owes the duty so to protect it, to his employer. But this does not include the power in question. It cannot be presumed that a master, by intrusting his servant with his property, and conferring upon him power to transact his business, thereby authorizes him to do any act for its protection that he could not lawfully do himself if present."

In Mulligan v. Railway Co., 129 N. Y. 506, 29 N. E. 952, 14 L. R. A. 791, substantially the same question was presented, and it was there held that an agent was not acting within the scope of his authority in procuring the arrest of a person who had purchased a ticket from him with counterfeit money; and I cannot find that this rule has been qualified by subsequent decisions. It is not what the servant "intended and believed to be for the interest of the master," but what authority the master, by the employment, conferred upon the servant. However reprehensible the acts of Tullis may have been, before a liability for such an act can be imposed upon the defendants it must be shown that they conferred such authority upon Tullis as would justify him in doing what he did as their agent, and that his acts were their acts, and done in pursuance of some authority, either express or implied. There is no proof of any express authority, and I do not think there is anything to justify a finding of an implied authority, to cause the arrest of a person in the public street after he has left the defendants' premises.

McLAUGHLIN, J., concurs.