### COLLINS v. BUTLER.

(Supreme Court, Appellate Division, Second Department.   May 1, 1903.)

1. MASTER AND SERVANT—ASSAULT BY SERVANT—LIABILITY OF MASTER—DAM-
   AGES—QUESTIONS FOR JURY.
     Where the undisputed evidence showed that defendant's clerk made
   an unjustifiable assault on a customer in defendant's store, on whom
   he was waiting, the question of defendant's liability was one of law,
   for the court; and the sole question for the jury was the amount of
   damages, if any, that plaintiff sustained.

Appeal from Trial Term, Kings County.
Action by Louisa Collins against James Butler. From a judg-
ment on the verdict of a jury in favor of plaintiff, and from an order
denying a motion for a new trial, defendant appeals. Affirmed.
Argued before BARTLETT, WOODWARD, HIRSCHBERG,
JENKS, and HOOKER, JJ.

John H. Rogan, for appellant.
Edward Henry Harrison, for respondent.

HOOKER, J. The plaintiff was examining goods displayed outside the defendant's store, and relates what took place as follows:

"I said to a boy who was standing there, 'Little boy, let me have those apples, will you?' and he says, 'You will have to go inside.' I went inside of the store, and was there about a second, when one of the clerks came around to me, and I said, 'Let me have that basket of apples outside, please.' He went outside and got the apples, brought them in, and went by the counter; and I walked up to the counter, and laid five cents down. He put half. the apples in the bag, and he looked up at me and he says, 'You can't have those apples for five cents. They are too good.' I said, 'They are marked five cents.' He says, 'You can't have them for that,' and he picked the basket up and went to the back of the store. At that time one of the other clerks came up, and I said to him, 'I bought those apples, and your clerk won't let me have them.' He says, 'Where is he?' I said, 'He has gone to the back of the store.' He says, 'He has no right to do anything like that.' And that time the young man came back, and I said, 'Please to hurry and let me have the apples,' and he said, 'Don't get too damned fresh, or you won't have them at no price, and get out of here. If you don't, I will kick you out.' I took the five cents off the counter, and turned my back to the young man, to see if I saw the manager of the store. Before I had walked two steps, he caught me by the back of the neck and this arm, shouting at the top of his voice to open the door—to open the door—and when I knew anything I was kicked in the street."

The evidence of the defendant did not materially differ from this account, except that his witnesses testified that she picked the apples over and carried them into the store herself, and that the clerk objected to giving them to her at the price of five cents after she had sorted them and selected the best. There was no evidence to sustain a defense of justification.

The court withdrew from the jury all questions as to defendant's: liability, and instructed them that the one question for them to determine was the amount of damages, if any, the plaintiff had sustained. The defendant at the close of the evidence moved to dismiss the complaint. This motion was denied. After the charge, he requested that he might go to the jury upon the question of defendant's liability. The court refused these requests, and the defendant excepted.

One of the earliest cases in which the question here presented arose was Mali v. Lord, 39 N. Y. 381, 100 Am. Dec. 448. The facts there were somewhat similar to those disclosed by the evidence here. Judge Grover, speaking for the court, said:

"The inquiry is whether a merchant, by employing a clerk to sell goods for him in his absence, or a superintendent to take the general charge and management of his business at a particular store, thereby confers authority upon such clerk or superintendent to arrest. * * * If not, then such acts are not within the scope of the authority delegated to the superintendent, and the employer is not responsible therefor, for the reason that while in their performance the servant is not engaged in the business of the master, any more than in committing an assault upon or slandering a customer."

That case was decided in 1868, and it is instructive to follow the changes which have taken place in the law from that time to the present, for that case is no longer to be considered as a controlling authority. Dupre v. Childs, 52 App. Div. 306, 65 N. Y. Supp. 179, affirmed on opinion below in 169 N. Y. 585, 62 N. E. 1095, has this to say in relation to that case—and, the affirmance in the Court of

Appeals being on the opinion of the court below, the language has
the sanction of the court of last resort:

"Although the case of Mali v. Lord, 39 N. Y. 381, 100 Am. Dec. 448, was
undoubtedly well decided upon the facts there made to appear, it cannot be
said, I think, now to be an accurate statement of the law as to the responsi-
bility of the master for the wrongful act of his servant. The later cases
which are cited above have laid down the rule in such different terms that
the case of Mali v. Lord must be assumed to have been considerably limited."

The first case after Mali v. Lord, supra, which attracts attention,
is Rounds v. Del., Lack. & West. R. Co., 64 N. Y. 129, 21 Am. Rep.
597. That was an action to recover damages for injuries sustained
by the plaintiff in consequence of being kicked off from one of de-
fendant's baggage cars by the baggageman. The opinion calls at-
tention to Mali v. Lord, as well as to other authorities upon the ques-
tion of wrongs committed by agents, and continues as follows (page
136, 64 N. Y., and 21 Am. Rep. 597):

"It is quite useless to attempt to reconcile all the cases. The discrepancy
between them arises not so much from a difference of opinion as to the rule
of law on the subject, as from its application to the facts of a given case."

And in affirming the judgment for the plaintiff the court lays down
the principle that:

"If the master, when sued for an injury resulting from the tortious act of
his servant while apparently engaged in executing his orders, claims exemp-
tion upon the ground that the servant was in fact pursuing his own pur-
poses, without reference to his master's business, and was acting maliciously
and willfully, it must ordinarily be left to the jury to determine this issue
upon a consideration of all the facts and circumstances proved."

Had this case arisen immediately after the decision in Rounds v.
Del., Lack. & West. R. Co., in 1876, it would have found the law in
such a state as probably to have required submission of defendant's
liability to the jury for its determination of the fact; but the progress
of civilization and the developing customs of trade, evidenced partly
by the centralization of industry, requiring the employment of larger
forces of agents, year by year, have evidently induced the courts to
extend the rule still further; and a little later we find the Court of
Appeals, in a per curiam opinion, using this language:

"The master who puts the servant in a place of trust or responsibility,
or commits to him the management of his business or the care of his prop-
erty, is justly held responsible when the servant, through lack of judgment
or discretion, or from infirmity of temper, or under the influence of passion
aroused by the circumstances and the occasion, goes beyond the strict line
of his duty or authority, and inflicts an unjustifiable injury upon another."
Cohen v. D. D., E. B. & B. R. Co., 69 N. Y. 170, 173.

The following year the court took occasion to lay down the proposi-
tion in language which has not been modified since, and has recently
been approved by the Court of Appeals. It is said in Mott v. Con-
sumers' Ice Company, 73 N. Y. 543:

"For the acts of the servant, within the general scope of his employment,
while engaged in his master's business, and done with a view to the further-
ance of that business and the master's interest, the master will be responsible,
whether the act be done negligently, wantonly, or even willfully. * * *
But if a servant goes outside of his employment, and, without regard to his.

service, acting maliciously, or in order to effect some purpose of his own, wantonly commits a trespass, or causes damage to another, the master is not responsible."

Judge Haight, writing for the Court of Appeals in Girvin v. N. Y. C. & H. R. R. Co., 166 N. Y. 289, 291, 59 N. E. 921, says that "the rule of liability governing cases of this character is well stated in the case of Mott v. Consumers' Ice Co., 73 N. Y. 543"; and he quotes the above language, which must now be taken to be settled law affecting questions of master's liability on account of wrongful acts of servants. One modification, however, took place after the establishment of this rule, and is to be found in Ochsenbein v. Shapley, 85 N. Y. 214. Defendants in that case were boiler makers, and placed one of their new boilers in a public street, and directed their superintendent to test it. One of the defendants suggested that the pressure during the test should not exceed 150 pounds, but, in answer to the request of a customer, the superintendent answered, "I will test it to two hundred, anyhow." The experiment began, with the safety valve loaded to a pressure of 198 pounds; and he attempted to hold down the safety valve, that the pressure might go above that figure, when the boiler exploded, and plaintiff was injured. It was there held that the act of the superintendent was reckless and foolhardy, and, as he was acting in defendants' business, they were chargeable, although in making the test he went beyond their express wishes, and that a refusal to submit the question to the jury was proper. The doctrine laid down in that case must be taken to recognize a change in the rules since the decision of Rounds v. Del., Lack. & West. R. Co., supra. The court uses this language at page 221, 85 N. Y.:

"About these facts there is neither dispute nor contradiction. We must measure them by the rule already stated [having cited Mott v. Consumers' Ice Co., supra], and determine whether they raised a question of fact which ought to have been submitted to the jury. In testing the boiler, Carter was acting in the master's business, and in the line of his own employment. That was the master's duty, intrusted to the servant. The experiment of actual trial was an essential element, closing and finishing the manufacture. The test was an ordinary and usual act in the business, and had been many times before applied by the act of the same servant. In making the test the latter went beyond the master's wish. There was no peremptory command to stop at a pressure of one hundred and fifty pounds."

We think, therefore, the trial judge was right in withholding the question from the jury. The facts were undisputed, and did not admit of different or contrary inference, and the question became merely a question of law, and was correctly determined.

The rule must now be considered as settled, and the principal difference of opinion in relation to defendants' obligation arises upon the question whether the evidence presents questions of fact for the jury, or questions of law to be determined by the court. The centralization of industry, and the immense volume of business transacted in the present day by large mercantile concerns, render necessary the employment of clerks and agents in great number. Few merchants in the larger cities to-day give personal attention to the service of customers. That branch of the business is left to clerks

and salesmen. At the present day, too, by many arts, every effort is made to induce prospective customers to enter mercantile establishments, examine wares there offered for sale, and transact other lawful business. The time has come when the law, always elastic to mete out justice as the growing needs of mankind's progress require, should hold the master liable for the wrongful acts of servants toward those lawfully upon the scene of his place of business.

The facts presented in this case, undisputed as they are, make out a question of law to be determined by the court, and that the acts of the salesman were, as matter of law, within the usual scope of his employment, "while engaged in his business, and done with a view to the furtherance of that business and the master's interest"; and while the servant was engaged in waiting upon the plaintiff as a customer, or engaged in any transaction with her in any way relating to the subject of the master's general business, he did not go outside his employment, nor act without regard to that service. Geraty v. Stern, 30 Hun, 426, is one of the earliest cases called to our attention which advances this proposition, but it did not go to the extent of holding it as matter of law. The later case of Fogarty v. Wanamaker, 60 App. Div. 433, 69 N. Y. Supp. 883, decided in this department, is also to be considered in this connection. The court was there called upon to decide an appeal from an interlocutory judgment overruling a demurrer. Mr. Justice Woodward wrote the opinion, and took occasion to point out the trend of authority; using this language (page 437, 60 App. Div., and page 885, 69 N. Y. Supp.):

"We are clearly of opinion that, under the rule quoted above, the complaint does state facts sufficient to constitute a cause of action; that the allegation of false imprisonment through the conduct of the defendant's agent or servant is good, if the plaintiff, on the trial, is able to establish that the person or persons so detaining and imprisoning her were in fact the agents or servants of the defendant in the particular transaction."

We have not overlooked Palmeri v. M. R. Co., 133 N. Y. 261, 30 N. E. 1001, 16 L. R. A. 136, 28 Am. St. Rep. 632, and Dwinelle v. N. Y. C. & H. R. R. Co., 120 N. Y. 117, 24 N. E. 319, 8 L. R. A. 224, 17 Am. St. Rep. 611. While the decisions in those cases are based largely upon the doctrine of Mott v. Consumers' Ice Co., supra, they are hardly germane, for the former decision proceeded on the theory that the servant was actually engaged in a preservation of the master's property, and the decision in the latter case rested more particularly upon the contractual obligation of the defendant to the plaintiff to transport him to New York, and to care for his comfort and safety while in transit.

These considerations lead us to the conclusion that the question was matter of law, and that the court did not err in refusing to submit the question of the defendant's liability to the jury.

The judgment and order should be affirmed, with costs. All concur.