Garretzen v. Duenckel.

ANTON GARRETZEN, Respondent, *v.* G. F. S. DUENCKEL, Appellant.

1. *Damages — Negligence — Agency — Responsibility of employer for injuries done by his servant, how determined.*—A principal is civilly liable for the neglect, fraud, or other wrongful act of his agent in the course of his employment, although the principal did not authorize the specific act; but the liability is only for acts committed in the course of the agent's employment. A master is not responsible for any act or omission of his servants which is not connected with the business in which they serve him, though in general he is responsible for the manner in which they execute his orders, and for their negligence in selecting means by which the orders are to be carried out. In determining whether a particular act is done in the course of a servant's employment, it is proper first to inquire whether the servant was at that time engaged in serving his master. If not, the master is not responsible, even though the injuries complained of would not have been committed without the facilities afforded by the servant's relations to his master. But if the acts are done in the course of the servant's employment, the master is liable for them, although the servant has acted injudiciously and negligently, and even though he disobeyed instructions.

*Appeal from St. Louis Circuit Court.*

*J. Wickham*, for appellant.

The defense set up is that the salesman was not acting in the course of his employment, and that the master is not liable for damages resulting from an injury caused by the carelessness or negligence of the servant, in the performance of an act not within the scope of the agency or the course of the employment of the servant, and which was expressly forbidden; also that there was no negligence. The principle of law holding the master liable for the acts of his servant or agent, rests on the ground that the master should not do an act himself, or cause it to be done,

with such negligence or want of skill as to injure third persons. This principle does not reach a wrong done by the servant while not engaged in the business of his master; nor does it reach wrongs caused by negligence in the performance of an act not directed by the master, or not within the scope of the agency or the course of the employment of the servant.    (1 Am. Lead. Cas. 619.)

A master is not liable for any act or omission of his servants which is not connected with the business in which they serve him, and does not happen in the course of their employment.    Beyond the scope of his authority the servant is as much a stranger as any other person.    (Schouler Dom. Rel. 638; Shearman & R. Negl. 64, 71; id. 77, § 63; Foster v. Essex Bank, 17 Mo. 510; Douglas v. Stephens, 18 Mo. 336, 367.)    No servant can, by an unauthorized act of his, raise a presumption against the master; the master, in such case, is no more liable to such a presumption than a stranger.    The law will not infer authority to commit a trespass; and in order to hold the master liable for a trespass committed by a servant, it is necessary to show that the act was done while the servant was acting under the authority of the master; and if wrong be done by a servant without the authority of his master, and not for the purpose of executing his orders and doing his business, the master is not liable.    (Church v. Mansfield, 20 Conn. 287; Howe v. Newmark, 12 Allen, 52; Mali v. Lord, 39 N. Y. 384.)    It was the duty of the plaintiff to show affirmatively that the act complained of was within the scope or course of the duty of the servant.    (Wilson v. Peverly, 2 N. H. 548; Wright v. Wilcox, 19 Wend. 343, 345; Tuller v. Voght, 13 Ill. 285; McManus v. Crickett, 1 East, 67.)

The only authority presumed by law is to do all lawful acts belonging to his employment, and the specific instructions of the master determine the limits of the employment and scope of the duty of the servant; no master is chargeable with the acts of his servant but when they are done in the execution of the authority given him.    When the servant oversteps his authority he becomes as a stranger, and the act not having been done in the service of the master, or within the limits of his authority, but contrary to

his express and specific instructions, it was willful, and the master is not liable. (Oxford v. Peters, 28 Ill. 435; Harris v. Nicholas, 5 Mumf. 489; Wright v. Wilcox, 19 Wend. 345; Armstrong v. Cooley, 5 Gill, 512; Joel v. Armstrong, 25 Eng. Com. Law, 512; McKeon v. Citizens' Railway Co., 42 Mo. 87–8.)

The cases of Joel v. Morrison, 6 Carr. & P. 510, and Sleath v. Wilson, 9 Carr. & P. 607, cited by respondent in support of the proposition that it is immaterial whether the act complained of was done in disregard of the orders of the master, have been overruled by late authorities. (Mitchell v. Crassweller, 13 C. B. 237; 16 Eng. L. and Eq. 448, 451; Story v. Ashton, Law R. 4 Q. B. 476, 479; Bard v. Yohn, 26 Penn. St. 482.)

*Jecko & Hospes*, for respondent.

The master is responsible for the acts of his servant, done in the general scope of his employment and in pursuit of his master's business, and it is immaterial whether the particular act causing the injury was done in disregard of the general orders or specific commands of the master. (Joel v. Morrison, 6 Carr. & P. 510; Sleath v. Wilson, 9 Carr. & P. 607; Limpus v. London General Omnibus Co., 1 Hurlst. & Col. 526; Croft v. Alison, 4 B. & Ald., 6 Eng. Com. L. R.; Seymour v. Greenwold, 7 Hurl. & Nev. 355.) The rule of *respondeat superior*, or that the master shall be civilly liable for the tortious acts of his servant, is of universal application, whether the act be one of omission or commission, whether negligent, fraudulent or deceitful. If it be done in the course of his employment the master is liable; and it makes no difference that the master did not authorize or even know of the servant's act or neglect, or even if he disapproved or forbade it, he is equally liable if the act be done in the course of the servant's employment. (Philadelphia & R. R.R. Co. v. Derby, 14 How. 486; Southwick v. Estes, 7 Carl. 385; Luttrell v. Hazen, 3 Snead, 20; Pennsylvania R.R. Co. v. Vandivier, 42 Penn. St. 365; Oxford v. Peters, 28 Ill. 434; Howe v. Newmark, 12 Allen, Mass., 52–3.)

Garretzen v. Duenckel.

WAGNER, Judge, delivered the opinion of the court.

This was an action against the defendant for damages caused by a wound inflicted on the plaintiff by the firing of a gun by a salesman who was in the employ of the defendant. The record shows that at the time of the happening of the injury the defendant was the keeper of a gun and ammunition store; that one Brewer was his servant, employed by him in selling arms and ammunition; and that, upon the occasion of the injury, the defendant being absent, Brewer was showing a rifle of Henry's patent to a customer, who requested to have it loaded, in order that he might see how it worked, and refused to buy unless it was done. Brewer at first refused, stating that it was against his orders to load firearms in the store, but for the purpose of making the sale he was finally persuaded and induced to load the gun, and in doing so it was discharged and shot the plaintiff, who was sitting at a window in a house on the opposite side of the street. The defense was that, inasmuch as the act of loading the gun was against the orders and instructions of the defendant, Brewer was acting outside of the scope of his employment and the defendant was not bound. This defense was overruled, and the jury found a verdict for the plaintiff, and the case is brought here by appeal.

The universally recognized rule is that a principal is civilly liable for the neglect, fraud, or other wrongful act of his agent in the course of his employment, though the principal did not authorize the specific act; but the liability is only for acts committed in the course of the agent's employment. A master is not responsible for any act or omission of his servants which is not connected with the business in which they serve him, though in general he is responsible for the manner in which they execute his orders, and for their negligence in selecting means by which the orders are to be carried out. In determining whether a particular act is done in the course of a servant's employment, it is proper first to inquire whether the servant was at the time engaged in serving his master. If the act was done while the servant was at liberty from his service, and pursuing his own ends exclusively,

there can then be no question that the master is not responsible, even though the injuries complained of could not have been committed without the facilities afforded by the servant's relations to his master. (Shearman & R. Negl., § 63 and notes.) It may not, perhaps, be very easy to reconcile the numerous cases on this subject, but we think that the correct rule extracted and deduced from them will be found as above laid down.

The leading case cited and relied on for the appellant is McManus v. Crickett, 1 East, 106. But that decision rested entirely upon the distinction between trespass and trespass on the case under the old forms of pleading. That case only decided that trespass *vi et armis* would not lie against the master for the willful trespass of his servant, which was not authorized or consented to by the master either directly or by implication, from the nature or subject-matter of the employment.

Lord Kenyon, in giving the judgment, says : " When a servant quits sight of the object for which he is employed, and, without having in view his master's orders, pursues that which his own malice suggests, he no longer acts in pursuance of the authority given him, and according to the doctrine of Lord Holt his master will not be answerable for such an act." But he adds that " this doctrine does not at all militate with the case in which a master has been holden liable for the mischief arising from the negligence or unskillfulness of his servant, who had no purpose but the execution of his master's orders," but that the form of such action must be case and not trespass.

The opinion contains nothing which bears upon this intermediate case of a servant who does not " quit sight of the object for which he is employed " but for the purpose of executing his master's orders, and in the course of his employment does an act injurious to another, or in disregard of his rights.

A few cases may be cited as illustrative of the principle, to show the turning point of responsibility on the part of the master.

In the case of McClenaghan v. Brock, 5 Rich. Law, 17, plaintiff's slave was on board a steamboat as a passenger, and the second engineer of the boat, by negligently discharging a gun, wounded him while he was upon a lighter alongside of the steamboat, and

it was held that the captain was not responsible. The engineer, it will be seen, was not acting, in the discharge of the gun, in any duty connected with his employment. He was doing something on his own account, independent of his business with the boat.

In the case of Mali v. Lord, 39 N. Y. 381, the plantiff was in defendant's store purchasing goods, the defendant was absent at the time, and the superintendent and clerks suspecting the plaintiff of having stolen goods, called in a policeman and had her searched; no goods were found upon her. She then brought her action for damages, and the court decided that as the act was done without the knowledge or the express or implied authority of the proprietor or owner, the master was not liable; that the servant was not impliedly authorized by his master to do that which the master himself, being present, would not be authorized to do. The selling of goods, which was the only power conferred upon the servants, had nothing to do with the matter of making arrests for supposed offenses.

In McKenzie v. McLeod, 10 Bing. 385, the servant was employed to light fires in the house, and she lighted furze and straw with a view to clean a chimney that smoked, and in doing so the house caught fire and was burned up. The servant was cautioned against the danger of such a proceeding, and it was shown that it was no part of her duty, but that carpenters and masons were employed to cleanse the chimney, and that they had recently performed that work in the presence of the servant. Under these circumstances it was left to the jury to say whether the servant was acting within the scope of her duty; and the jury having found for the defendant, the court refused to grant a new trial. This case is criticised by the authors of the treatise on negligence, and they declare that, although the principle may be sound, it may well be doubted whether the jury did not err in finding that the act was not within the scope of the servant's general or ostensible authority.

Douglas v. Stephens, 18 Mo. 362, was an action for damages to the goods of the plaintiff in the cellar of his store, alleged to have been caused by the obstructions of a sewer by the servants of the defendants; and Scott, J., in delivering the opinion of the

court, said: "Although a master is not liable in trespass as principal for the unlawful and directly injurious act of his servant unless he has commanded it, yet he is responsible for consequential damages where, by the negligence and carelessness of the servant in doing the business of his employer, another receives an injury for which the servant would himself be liable in an action of trespass. To make the master liable for the consequential damages resulting from the trespass of the servant, it must appear that the servant was in the course of his employment, and that by an injudicious or negligent or unskillful act done in furtherance of his master's business the injury resulted to the plaintiff. But if the servant, willfully and to effect some design of his own, does an injury to another, the master will not be liable."

To the same effect is the more recent case of Minter v. Pacific R.R., 41 Mo. 503, where we held that if a servant is acting in the execution of his master's order, and by his negligence causes injury to a third party, the master will be responsible, although the servant's act was not necessary for the proper performance of his duty to his master, or was even contrary to his master's order.

In Croft v. Alison, 4 B. & Ald. 590, the Court of King's Bench say that " the distinction is this: if a servant driving a carriage, in order to effect some purpose of his own, wantonly strikes the horses of another person and produces the accident, the master will not be liable. But if, in order to perform his master's orders, he strikes, but injudiciously, and in order to extricate himself from a difficulty, that will be negligent and careless conduct for which the master will be liable, being an act done in pursuance of the servant's employment." The case showed that the defendant's servant had willfully struck the plaintiff's horses when driving his master's carriage, in order to extricate himself from an entanglement of the carriages, occasioned by his own fault, and thereby had caused an injury to the plaintiff's carriage, and a verdict for the plaintiff was supported.

In Seymour v. Greenwood, 6 Hurl. & Norm. 359, Chief Baron Pollock asks the question, " Suppose a servant, driving along a road, in order to avoid a danger, intentionally drove against the

carriage of another, would not the master be responsible?" And in Limpus v. London General Omnibus Company, 1 Hurlst. & Col. 526, it was decided in the exchequer chamber that the master is responsible if the servant is in the course of doing the master's work and does the act to accomplish it.

In a recent well-considered case in Massachusetts, after a review of the authorities, the court, speaking through Hoar, J., lays down the doctrine as follows: "In an action of tort in the nature of an action on the case, the master is not responsible if the wrong done by the servant is done without his authority, and not for the purpose of executing his orders or doing his work. So that if the servant, wholly for a purpose of his own, disregarding the objects for which he is employed, and not intending by his act to execute it, does an injury to another not within the scope of his employment, the master is not liable. But if the act be done in the execution of the authority given him by his master, and for the purpose of performing what the master has directed, the master will be responsible, whether the wrong done be occasioned by negligence or by a wanton or reckless purpose to accomplish the master's business in an unlawful manner." (Howe v. Newmark, 12 Allen, 49.)

This exposition of the law fully coincides with the previous rulings of this court. The true ground upon which a master avoids responsibility for most of the willful acts of his servants, when unauthorized by him, is that they are not done in the course of the servant's employment. When they are so done, the master is liable for them. Tested by those principles, the conclusion in this case is inevitable. Brewer, the servant, was unquestionably aiming to execute the order of his principal or master. He was acting within the scope of this authority and engaged in furtherance of his master's business. There is no pretense that he was endeavoring to do anything for himself. He was acting in pursuance of authority, and trying to sell a gun, to make a bargain for his master, and in his eagerness to subserve his master's interests he acted injudiciously and negligently. It makes no difference that he disobeyed instructions. Innocent third parties who are injured in consequence of his acts cannot be affected thereby.

The instructions of the court fairly submitted the question of negligence to the jury, and are not obnoxious to any reasonable objection. The court committed no error in ruling out the evidence offered by the defendant for the purpose of showing that the act of loading or charging guns in a store is no part of the business of selling the same. If we admit that the servant did an unauthorized act, the evident truth still remains that it was done wholly in carrying out and executing his master's business, and in such a case the master will be held liable. When the servant acts in the course of his employment, although outside of his instructions, the master will be held responsible for his acts.

I see no error in the record, and with the concurrence of the other judges the judgment will be affirmed.