## WILLIAM F. CHANDLER, Appellant, v. FLEMMON E. GLOYD et al.

### Division Two, March 9, 1909.

1. **MOTION FOR NEW TRIAL: Sustained and Set Aside: Continuance: Appeal at Subsequent Term.** Where a motion for new trial was filed and sustained, and within four days appellant filed a motion to set that order aside, and the cause was continued to the next term, and the motion to set aside was then sustained on condition that appellant file a *remittitur* within a prescribed time and that was done, but the motion for a new trial was later at the same term sustained, and appellant again filed his motion to set aside the order and the cause was continued to the next term, and then the motion to set aside was overruled, and appellant was allowed to and did withdraw his *remittitur*, and the motion for new trial was sustained, and appellant appeals from that order, his bill of exception is due at this last term, and his appeal if taken at that term is timely.

2. ———: ———: ———: ———: **Delayed by Motion to Set Aside.** The court can retain its jurisdiction of a cause after a timely motion for a new trial has been filed, by continuing it to the next term, and can legally pass upon the motion at that term. And it may at such subsequent term set aside its order sustaining the motion, or continue the motion to set aside till the next term, and all the time it has jurisdiction of the cause,

and appellant is not required to take his appeal at the term at
which the motion for a new trial is first sustained, but it is
timely if taken at the term at which the motion to set aside
that order is overruled.

3. ————: Grounds Assigned: Grounds on Appeal.  Where the
trial court sustained defendants' motion for a new trial on the
ground that it had erred in refusing a peremptory instruction
to find for them, they are not precluded from showing on plain-
tiff's appeal that, even if that ruling was wrong, they were en-
titled to a new trial on other grounds assigned.

4. NEGLIGENCE: Of Servant: Liability of Master.  If a servant,
acting in the execution of his master's orders, by his negligence
causes an injury to a third party, the master will be responsible,
although the servant's act was not necessary for the proper per-
formance of his duty to his master, and although the servant,
in the particular instance, exceeded his instructions and acted
without authority. .

5. ————: ————: ————: Public Policy.  The liability of the
master for his servant's torts is not based upon any presumed
authority to do the negligent act, but upon public policy.  The
rule of law is that it is more reasonable, when one of two inno-
cent persons must suffer from the wrongful act of the master's
servant, that the master, who has employed the servant in a po-
sition of confidence and trust, should suffer than that a stranger
should do so.

6. ————: ————: ————: Scope of Employment: Falling Into
Pitfall.  A gas company had constructed an iron track about
six feet high upon which small dump cars were run for bear-
ing away cinders from its factory, the space under the track
being filled with cinders as the dump progressed.  Defendants
were owners of a near-by lumber yard, and told their servant
to get a load of cinders from the gas company for use in making
walks in their yard, and the gas company's superintendent told
him to get the cinders from the end of the dump.  The ser-
vant loaded his wagon at the end of the dump, but his team be-
ing unable to pull the load from the deep depression there, he
unloaded the wagon and moved further up the track, where the
surface was level, and loaded the wagon, just at night fall, by
digging the cinders from under the track, thereby making a deep
hole, and during the night plaintiff, who was an employee of the
gas company and who knew nothing of the excavation, in un-
loading a car came to the hole, fell through, and was injured.
The servant testified that he loaded the wagon at the place of
the excavation on his own responsibility, and all the evidence is
to the effect that he was instructed to load the wagon at the end
of the dump, and that defendants knew nothing of the place at
which the cinders were usually loaded except such knowledge as
they were chargeable with from the knowledge of the servant,

and he testified that he had never hauled cinders from the dumps except in day time and had never seen cinders rolled out upon the track except in day time. There was evidence that it was customary to roll out the cinders during the night time. *Held,* that the digging of the excavation by the servant was within the scope of the employment of defendants' servant to go to the gas company's premises and get a load of cinders for them, and they are responsible to plaintiff for the injuries resulting from their servant's unauthorized act in digging the pitfall into which plaintiff fell, without contributory negligence on his part.

7. ———: ———: ———: ———: ———: **Contributory Negligence: Failing to Light Lamp.** Where, under the testimony, it was the duty of the court to submit to the jury the question of whether or not plaintiff was guilty of contributory negligence in not lighting a lamp, maintained by the gas company, to light the track upon which plaintiff rolled the dump cinder car, and the court submitted the question under a most favorable instruction, a new trial cannot be granted to defendants on the ground of plaintiff's contributory negligence in failing to light the lamp.

8. ———: **Pleading: Knowledge: Proof.** Where the substantial averment is that defendants' servant was negligent in digging an excavation under a gas company's cinder track upon which by slight inquiry he could have ascertained that its servants passed at night in unloading the cinder cars, plaintiff's cause of action is not to fail because he also alleged that the servant had knowledge that the company's servants rolled cars on the track at night, and there was no proof of such knowledge.

9. **EXCESSIVE VERDICT: Remittitur.** Where the trial court at one time, as a condition for overruling defendant's motion for a new trial, required plaintiff to remit a part of his judgment, and he accepted that condition, and this court is of the opinion that if such *remittitur* is now required, as of the date of the judgment, approximate justice will be done for the injuries sustained, the *remittitur* in the same amount will be required.

Appeal from Jackson Circuit Court.—*Hon. W. B. Teasdale,* Judge.

REVERSED ON CONDITION.

*Scarritt, Scarritt & Jones* for appellant.

The trial court erred in holding that a peremptory instruction to find for defendants should have been

given at the conclusion of all the evidence in the case.
(a)  Knight in digging up, paying for and carrying
away the load of cinders which formed the excava-
tion into which plaintiff fell was in the execution of
his master's business and was acting within the scope
of his employment.  (b)  In cases like this where
the terms of the employment are established by word
of mouth and the course of business or practice, if it
cannot be positively asserted whether the negligent act
complained of is within the scope of the servant's em-
ployment, or of the master's business, then the de-
termination of whether it was or not is an issue of fact
to be determined by the jury and not a question of
law to be determined by the court.  (c)  Defendants
adopted the theory and principle just stated and sub-
mitted it to the jury through their instruction.  (d)
For the consequences of the negligent doing of an act
by the servant acting pursuant to the master's orders,
or in the execution of the master's business, or within
the scope of his employment, the master is liable.
(a)  Englehart v. Farrout Co., 1 Q. B. 240; Mitchell
v. Crassweller, 13 C. B. 237; Quinn v. Power, 97 N. Y.
533; Hayes v. Wilkins, 194 Mass. 223; Sherlock v.
Railroad, 85 Mo. App. 46.  (b)  Ritchie v. Waller,
63 Conn. 155; Whatman v. Pearson, L. R. 3 C. P. 422;
Taylor v. Labeaume, 14 Mo. 401; Smith v. Stokes, 76
Mo. 178; Rickey v. Zappenfeldt, 64 Mo. 277.  (c)  Ellis
v. Harrison, 104 Mo. 270; Horgan v. Brady, 155 Mo.
659; Seckinger v. Mfg. Co., 129 Mo. 590.  It is a well-
settled rule of law in this State that if a litigant
through his own instructions submits an issue of fact
to a jury, and that issue is ruled against him, he will
not thereafter be heard to say that there was not
sufficient evidence to sustain the jury's finding upon
that issue.  Mercantile Co. v. Burrill, 66 Mo. App.
117; Fenwick v. Bolwing, 50 Mo. App. 516; Seiter
v. Vischoff, 63 Mo. App. 160; Jennings v. Railroad,
99 Mo. 394; Hopkins v. Modern Woodmen, 94 Mo.

App. 409; Hartman v. Railroad, 548 Mo. App. 619; Randolph v. Frick, 57 Mo. App. 400; Gray v. Seligman, 75 Mo. 31; Minton v. Steele, 125 Mo. 181. (d) Hiern v. Mill, 13 Ves. 120; Meier v. Blume, 80 Mo. 183; Hedrick v. Beeler, 110 Mo. 91; Hickman v. Green, 123 Mo. 165; Farwell v. Railroad, 4 Metc. 49; Pollock on Torts, p. 77; Cooley on Torts (3 Ed.), p. 1025; Barwick v. Bank, 36 L. J. Ex. 147; Gass v. Cobbens, 43 Mo. 377; Harriman v. Stowe, 57 Mo. 98; Knowles v. Bullene, 71 Mo. App. 341; Stone v. Hills, 45 Conn. 47; Minter v. Bradstreet, 174 Mo. 497.

*Basil P. Finley, Leslie J. Lyons* and *J. W. Farrar* for respondents.

(1) Defendants have the right to present any and all other grounds before this court going to show their right to have the judgment in this case affirmed and in defense of the action of the trial court. Smart v. Kansas City, 208 Mo. 182; Emmons v. Quade, 176 Mo. 29. (2) The granting of a new trial lies within the sound discretion of the trial court and the action of the trial court in this respect will not be disturbed on appeal unless it is clearly shown by the record that this discretion was abused. The presumptions are in favor of the correctness of the trial court's action. Rodan v. Railroad, 207 Mo. 406; Lee v. Geo. Knapp & Co., 137 Mo. 392. (3) There was no proof of any negligence of respondents. 21 Am. and Eng. Ency. Law (2 Ed.), 457; Fuchs v. St. Louis, 167 Mo. 640; Atchison v. Railroad, 80 Mo. 213; Waldier v. Railroad, 71 Mo. 514. (4) The act of Knight was not in the furtherance of his master's business and was not within the scope of his employment. Farber v. Railroad, 32 Mo. App. 383; In the Joseph B. Thomas, 86 Fed. 658; Sheridan v. Bigelow, 93 Wis. 426; Henry v. Railroad, 50 Cal. 183; McGowan v. Chicago, etc., 91 Wis. 147; Motey v. Pickle Co., 36 U. S. A. 682; Beasley v.

Transfer Co., 148 Mo. 413; Stone v. Railroad, 171 Mass. 536; Mali v. Lord, 39 N. Y. 381; Atherton v. Coal Co., 106 Mo. App. 591; Voegeli v. Marble Co., 49 Mo. App. 643. (5) Appellant was guilty of contributory negligence. Kaare v. Troy Steel & Iron Co., 139 N. Y. 369; Piper v. Cambira Iron Co., 78 Md. 249; Hathaway v. Railroad, 92 Ia. 337; McCinnon v. Narcross, 148 Mass. 533; Levesque v. Janson, 165 Mass. 16; Rawley v. Collian, 90 Mich. 31. (6) At the time he dug the excavation, Knight, though the nominal servant of the Gloyds, was in fact working under the direction and control of the Gas Company as to the manner and place of removing the cinders. Under this circumstance respondents are not liable. Hardy v. Sheldon Co., 47 U. S. Cir. Ct. App. 368; 20 Am. and Eng. Ency. Law, 178; Wyllie v. Palner, 19 L. R. A. 285; Shearman & Redfield on Negligence (4 Ed.), 269; McInerney v. Canal Co., 151 N. Y. 411; Railroad v. Keighron, 74 Pa. St. 316; Clapp v. Kemp, 122 Mass. 481; Atherton v. K. C., C. & C., 106 Mo. App. 591; Wood on Master & Servant, sec. 279; Walker v. Railroad, 121 Mo. 575. (7) The cause was one for the court and should not have been submitted to the jury. Sindlinger v. Kansas City, 126 Mo. 315. (8) There is no evidence upon which to base appellant's instructions. Bonine v. Richmond, 75 Mo. 439; Krech v. Railroad, 64 Mo. 175; Gist v. Loring, 60 Mo. 487; Quinlivan v. English, 44 Mo. 46; Bender v. Dungan, 99 Mo. 131; Donahoe v. Railroad, 83 Mo. 543; James v. Clough, 25 Mo. App. 147; Knoche v. Whiteman, 86 Mo. App. 571. (9) The jury has allowed a recovery for damages which are clearly not the proximate result of respondents' wrong if respondents committed any wrong. 7 Am. and Eng. Ency. Law, 387; Francis v. Transfer Co., 5 Mo. App. 7; Hunter v. City of Mexico, 49 Mo. App. 17. (10) There was no basis upon which a *remittitur* should be ordered by the court. Hunter v. City of Mexico, 49 Mo. App. 17; Slattery v.

St. Louis, 120 Mo. 183; Creve Coeur v. Tamm, 90 Mo. App. 189; Koeltz v. Bleckman, 46 Mo. 320; Sheedy v. Brick Works, 25 Mo. App. 527; Rafferty v. Railroad, 15 Mo. App. 559.

GANTT, P. J.—This is an appeal from an order of the circuit court of Jackson county granting a new trial to the defendants on the ground that said court erred in refusing the peremptory instruction requested by the defendants, at the close of all the testimony in the case, to find for the defendants.

Prior to the investigation of the alleged error of the circuit court in granting said new trial, we are called upon to determine the motion of the defendants to dismiss this appeal or affirm the judgment of the circuit court in granting said new trial, on the ground that the record shows that the appeal was not taken at the term of the court at which the order sustaining defendants' motion for new trial was made. In order to a proper understanding of this motion to dismiss the appeal, the following facts disclosed by the record must be kept in view: the verdict for the plaintiff was rendered July 15, 1904, at the April term of the Jackson Circuit Court. On July 19, 1904, the defendants filed their motion for new trial. On February 4, 1905, at the January term, the defendants' motion for new trial was sustained. On February 7, 1905, and at the same term, the plaintiff filed a motion to set aside the order granting a new trial. The cause was then continued to the April term, 1905. On April 29, 1905, and at the April term of said court, the motion to set aside the order granting a new trial was sustained if the plaintiff should remit $3,500 of the verdict on or before May 10, 1905, otherwise the motion for new trial would be sustained. Afterwards, on Wednesday, May 10, 1905, at the same term, the plaintiff filed his *remittitur* of $3,500. Afterwards at the same term, on May 27, 1905, the defendants' motion for new trial was

again sustained for error in refusing the peremptory instruction to find for the defendants, to which ruling the plaintiff at the time duly excepted and afterwards, to-wit, on June 1, 1905, at the same April term, plaintiff filed his motion to set aside the order of May 27th, granting the motion for new trial on the ground that the said order of May 27, 1905, was improvidently entered; that the plaintiff on May 10, 1905, in compliance with the ruling upon and induced thereto by the order of the court of April 29th, had entered its *remittitur* upon the verdict, and the court had entered no judgment thereon, and had not set aside its order of February 4, 1905. Thereafter at the same term and on June 19, 1905, the plaintiff filed its application for a change of venue and the cause was then continued to the October term, 1905, and on November 18, 1905, the change of venue was granted and the cause was transferred to Division Number Four of the circuit court of Jackson county, over which Honorable H. L. McCune presided. On December 23, 1905, at said October term, the plaintiff's motion, filed June 1, 1905, to set aside the order of May 27, 1905, was by the court sustained. And afterwards on January 6, 1906, at the said October term, the court of its own motion set aside its order entered on December 23, 1905, and continued the cause. And afterwards on January 13, 1906, the cause came on for hearing upon plaintiff's motion filed June 1, 1905, to set aside the order of May 27, 1905. The court ordered that the order of the court made on February 4, 1905, sustaining the defendants' motion for new trial for the reason that the verdict of the jury was excessive be set aside, and the same was set aside, and that the conditional order of the court made April 29, 1905, sustaining plaintiff's motion to set aside the order granting a new trial also be set aside, and the order of the court theretofore

217 Sup—26

made and entered on May 27, 1905, sustaining defendants' motion for new trial for error in refusing a peremptory instruction finding for defendants, be also set aside, and plaintiff was allowed to withdraw his *remittitur* filed on May 10, 1905, which was accordingly done, and said *remittitur* canceled, and thereupon the court sustained the motion for new trial on the ground that the court erred in refusing the peremptory instruction requested by the defendants, to which action of the court the plaintiff at the time duly excepted. And thereupon on the same day, at said January term, 1906, the plaintiff prayed an appeal to the Supreme Court and filed his affidavit in support thereof and an appeal was granted to the plaintiff.

The contention of the defendants is that the circuit court of Jackson county lost jurisdiction of this case at the expiration of the January term, 1905, and that all orders made in the case subsequent to that term were absolute nullities and void. And the affidavit for appeal not having been filed at the January term, 1905, this court has no jurisdiction of this appeal.

In support of this proposition counsel relies upon section 808 of the Revised Statutes of Missouri for 1899, which is as follows: "No such appeal shall be allowed unless: First, it be made during the term at which the judgment or decision appealed from was rendered; and, second, the appellant or his agent shall, during the same term, file in the court his affidavit, stating that such appeal is not made for vexation or delay, but because the affiant believes that the appellant is aggrieved by the judgment or decision of the court."

Counsel also cites a number of decisions by this court, and the Court of Appeals construing said section 808. But none of said cases reach the condition of the record like the one before us on this appeal. In Riddlesbarger v. McDaniel, 38 Mo. 139, a very similar question arose. In that case the defendants moved

to dismiss the appeal and strike out the bill of exceptions because the same was not made and signed at the term in which the judgment was rendered. It appeared that damages were assessed by the court below upon the dissolution of an injunction and that the plaintiffs at the same term and within the time prescribed by law filed their motion for new trial, which motion was by the court continued until the next term. At the next term the motion was considered by the court and overruled. The plaintiffs excepted and filed their bill of exceptions and appealed to this court. It was contended that, as the bill of exceptions was not made and signed during the term at which the judgment was rendered, therefore it was filed without authority of law and was a mere nullity and should be stricken out. The statute at that time required that "exceptions may be written and filed at the time or during the term of the court at which they are taken, and not after," and that "all exceptions taken during the trial of a cause or issue before the same jury shall be embraced in the same bill of exceptions." [R. S. 1855, p. 1264, sec. 28.] This court stated the question to be "whether a motion for new trial can, at the instance of the court, be continued from the term at which the verdict was rendered until the next succeeding term, and have the effect of carrying with it the cause, so that upon a final determination of the motion exceptions may be preserved by the party. The statute intends that the exceptions shall be written out and filed during the term, while the cause rests in the breast of the court. But where a motion for new trial is made at the close of the term, there may be good reasons for continuing it until the next succeeding term for final hearing. And until a final hearing and disposition of the motion, the whole matter would unquestionably rest in the breast of the court, and it would be competent for it, in its discretion, for good cause to sustain the motion and award a new trial.

Until this result is reached, it cannot be said that the cause is finally determined. And as the statute requires all exceptions to be embraced in the same bill, it will be correct if filed at the term when the matter is disposed of." It will be observed that in that case the appeal was taken at the term of the court at which the motion for new trial was overruled, although it was subsequent to the term at which the judgment was rendered. The ruling in that case has been uniformly followed by this court in subsequent cases. [Gray v. Parker, 38 Mo. 160; Henze v. Railroad, 71 Mo. l. c. 644; Richardson v. Agr. & Mec. Assn., 156 Mo. l. c. 412; State v. Larew, 191 Mo. l. c. 196.]

The reasoning upon which those cases must stand is that the filing of the motion for new trial at the term at which the judgment was rendered and its continuance to a subsequent term by the court kept the matters of exception in the breast of the court, and when the court finally disposed of the motion for new trial, the party whose motion for new trial was overruled could then file his bill of exceptions and preserve the same, although taken at a prior term, and could then appeal from the action of the court for the reason that until the motion for new trial was determined, the judgment was not a final one from which an appeal could be taken. Now in this case it is not questioned by counsel for defendants but in fact is conceded that although the verdict in this case was rendered against them at the April term, their motion for new trial filed at said April term was continued until the January term of said court, 1905, so that it must be admitted that up to the time the court made its order sustaining this motion for new trial, to-wit, February 4, 1905, the cause was still in the breast of the court so to speak, and it had jurisdiction to either sustain or overrule the motion. It must also be accepted as settled law that during the term at which any order of judgment of the court is entered, the court has the power to set

the same aside either upon the motion of a party thereto, or upon its own motion. But the contention of the defendants is that while this may be true as to a motion for new trial, it is not so as to the plaintiff's motions to set aside the order granting a new trial although entered at a term of the court at which the court clearly had the right to set aside its order granting a new trial. And that when the court continued the motion to set aside the order granting the new trial it did not affect the duty of the plaintiff to take his appeal from the order granting the new trial.

It will be observed that while defendants concede that a motion for a new trial filed within the four days allowed by statute may be continued to a succeeding term and when overruled the movant may then preserve all the exceptions taken at the trial term, in his bill of exceptions, they draw a distinction between a motion for new trial and a motion made at such subsequent term to set aside the order overruling the motion for new trial. The ground upon which a motion for new trial may be continued to a subsequent term, is, that the court has retained its jurisdiction of the cause and has not lost it by the continuance. But if the court can retain its jurisdiction by continuing it and can legally pass upon it at a subsequent term, then it also had jurisdiction of the cause until the adjournment of that term, and it may also during that term set aside its order sustaining it, or continue that motion until the next term. While courts of last resort have held otherwise, we are unable to appreciate the distinction thus drawn. The reason given that a party may thus delay the final disposition of the cause, can be obviated by the court, by disposing of it at the term, but if the court is of the opinion that it deserves careful consideration and sufficient time does not remain at that term, we cannot see how the jurisdiction of the cause is lost, and this, after all, is the question presented. In this case, all parties appeared to the respective

hearings of these motions and the court changed its rulings and the defendants finally were successful in having their motion for a new trial sustained. We cannot bring ourselves to the conclusion that the circuit court's action in retaining these motions and disposing of them, was a nullity. The case presents exceptional features which seemed to call for a consideration of these matters before a final disposition was made of the cause, and accordingly we think the motion to dismiss the appeal should be overruled.

II.   This brings us to a consideration of the merits of the appeal from the order granting a new trial. The trial court specified on the record its reason for granting the new trial, that the court had erred in refusing a peremptory instruction to find for the defendants, and while this presents the most important question, it is clear that even if that ruling was wrong, the defendants are not precluded from showing by the record that they were entitled to a new trial on other grounds. [Hewitt v. Steele, 118 Mo. 463; Emmons v. Quade, 176 Mo. 22.]

Did the evidence present a case which required the court to submit the case to the jury? The plaintiff and the injuries involved in this cause are the same as those passed upon by this court in Chandler v. Kansas City Missouri Gas Co., 174 Mo. 321. In that case the Gas Company was the sole defendant and this court held it was not liable. In this case the Messrs. Gloyd are now the sole defendants, the plaintiff having dismissed as to the Gas Company and the first count in his petition.

The petition in substance stated that the Gas Company operated, at the time of the injuries complained of, a certain factory known as the Eleven Foot Set, in which were produced large quantities of refuse cinders, which were moved eastwardly from that factory at all hours of the day or night along a narrow

track called the cinder track about one hundred feet
or more, and then dumped outside of the Gas Com-
pany's enclosure east of Harrison street, by small cin-
der cars or trucks which were pushed out or back along
the track, by the Gas Company's employees; that on
December 27, 1899, the plaintiff was in the employment
of the Gas Company as a day laborer engaged in em-
ployment other than the moving of these cinders, and
that at the time mentioned in the petition defendants
knew of the usual and customary method of moving
and disposing of the cinders from the said factory as
above set out and knew that the employees of the Gas
Company who should push the cinder cars or trucks
along said cinder track were required to and would in
the usual course of business walk along or near said
cinder track in moving said cinder cars thereon to and
from the said factory, and that such employee would
go along said track and move cinder cars thereon in
the darkness of night; that the defendants negligently
and carelessly on the afternoon of December 27, 1899,
excavated and caused to be excavated and to remain
open and unguarded, a hole or pit about four feet deep
and eight feet long and four feet wide along, near and
under said cinder track, when they knew or by the ex-
ercise of ordinary care might have known that the em-
ployees of the Gas Company would pass along said
cinder track, according to the custom, shortly there-
after in the darkness, and when there was no light to
reveal the dangerous hole or pit to him, and when he
would receive no warning or notice of the existence of
said hole or pit; that the said hole or pit was a danger-
ous menace to the servants of the Gas Company and
especially to plaintiff, who was required to and did
thereafter pass along said track where said pit or hole
was made; that plaintiff was ignorant of the existence
of said hole; that the defendants negligently and care-
lessly failed to inform the plaintiff of the existence
of said hole and negligently failed to furnish a light

to the pathway along which the plaintiff as a servant
of said Gas Company was required to go in moving
said cinder cars along said track, and negligently fail-
ed to give plaintiff any notice of the existence of said
hole or pit; that on said day plaintiff was taken from
his usual employment and was by the Gas Company
directed to remove cinders along said cinder track
and deposit the same along, near or under said track
at a distance varying from ninety to one hundred and
ninety feet from said factory during the night, when
it was dark, and when plaintiff could not by the exer-
cise of ordinary care discover the existence of said pit
or hole; that in obedience to his orders plaintiff about
seven o'clock in the evening of that day did undertake
to move a cinder car along said cinder track, and with-
out any fault on his part fell into said hole excavated
under said track and sprained and mangled the knee
cap of his right knee and sprained and lacerated the
tendons of his right limb and broke and injured the
muscles of his knee so that the same became stiff and
his leg permanently weakened and he is crippled for
life.

The answer admitted the partnership of the de-
fendants and denied all the other allegations, and then
pleaded contributory negligence and the assumption
of risk by plaintiff. The reply denied the new matter.
There was a verdict for the plaintiff for seventy-five
hundred dollars.

The evidence disclosed in substance that the de-
fendants were copartners in the lumber business with
a lumber yard between Nineteenth and Twentieth on
Charlotte street in Kansas City. They desired a quan-
tity of cinders for the purpose of paving the roadways
in their yard, and some two weeks prior to the accident
one of the defendants instructed his foreman of the
yard to procure the cinders. The foreman directed a
teamster by the name of Knight to take a two-horse
team and wagon and go to the Gas Company's grounds

to procure the cinders. Knight testified that the fore-
man told him that he could get the cinders at the Gas
Company's factory. The Gas Company at that time
was engaged in the manufacture of artificial gas at
First street in said city. In the course of its business,
it accumulated large quantities of cinders which were
taken out of its boiler rooms in a small car run upon a
narrow iron track. The cinders were being used by the
Gas Company to raise the surface of the ground in
front of the factory. The track along which the car
was pushed was made of iron rails laid on longitudinal
sills elevated four to six feet above the natural surface
of the ground, but at the time of this accident the pro-
cess of filling had progressed so far that the space
under the track on both sides to a considerable distance
north and south had been filled with cinders and level-
ed. The filling was being extended eastward, and
when the ground at the end of the track was filled and
leveled north and south as far as desired, the track
would be extended further east. The factory south
of Front street produced cinders in considerable quan-
tities, also, which were not so convenient to dispose of,
and those cinders the Gas Company sold to concerns
in the city, who hauled them away in wagons and used
them for filling up grounds of their own. It some-
times occurred that there was not enough cinder output
from this south factory to meet the demand, and when
that was the case the Gas Company allowed the wagons
to take cinders from the north side. To do this the
usual course was for the wagons to go to the east end
of the track above described and take the cinders from
the dump. These cinders were moved at all hours of
the day or night as the occasion demanded. The fore-
man of the Gas Company, as well as the witness
Knight, were unable to state clearly just when or how
the arrangements for the purchase of the cinders were
made. There was no testimony that the defendants
personally knew as to the place and manner of pro-

curing the cinders except, in a general way, they understood that the cinders were being procured at the Gas Company's factory. Knight received his instructions from the foreman of the Gas Company as to the specific place of getting the cinders, as to these matters he received no instructions from the defendants. The foreman of the Gas Company directed him to get the cinders from the end of the dump.

.On the evening of the 27th of December, 1899, when Knight went to the Gas Company to get a load of cinders, he received his instructions from the foreman of the Gas Company to get this particular load of cinders at the end of the dump. He went to the point designated and loaded his wagon, but his team was unable to pull the load out. He then unloaded a portion or all of the cinders and drove his team along the side of the cinder track for a short distance and took cinders from under the cinder track and loaded his wagon therewith. This was late in the afternoon of the day. The plaintiff was engaged that evening in removing the cinders from the factory and in pushing the car along the track, and not knowing of the hole dug thereunder by Knight, and it being dark, fell into the hole and his knee cap was injured. Mr. Waring, the superintendent of the Gas Company, testified that he gave Knight no permission to dig a hole under or near the track, or at any place except at the dump at the end of the track. Knight testified that he had been working for the defendants a month or six weeks before the accident and was engaged in driving one of their teams. He testified that he made the excavation or hole under the track himself, and he testified that he was driving a pair of young mules that were not very well broken to heavy hauling and he could not pull his load out of the pit from which he was directed to get the cinders, and so he had to dump that or a portion of . it and then he pulled up on a level and finished his·· load by taking the cinders from under the track. He

testified that he had seen the employees of the Gas
Company rolling these cinders out to fill under the
track, on the cinder cars, but he had never seen the
cinders moved in the night time. The only time he had
ever seen them moved was in the day time, and that he
never hauled any except in the day time. He said the
superintendent of the Gas Company told him to go
to the cinder pile and get the load. He was asked who
told him to dig the cinders from under the track and he
answered: "Well, I done that on my own responsi-
bility."

While there are allegations in the petition as to a
failure to furnish lights and a failure to notify the
plaintiff as to the existence of this hole, it is apparent,
we think, that these allegations were framed with a
reference to the Gas Company while it was yet a party
to the suit, because these duties, if they devolved upon
anyone, were those of the Gas Company at which they
were directed. The case as submitted to the jury was
bottomed upon the knowledge of the defendants Gloyd
of the custom and method of the Gas Company in re-
moving the cinders by the use of the said track and of
the digging and leaving unguarded the pit or hole
under the track when they knew, or at least, that
Knight, their teamster knew, or might have known,
that the employees of the Gas Company would pass
along the cinder track according to the custom and
course of business of the Gas Company, and that this
hole or pit so excavated by him was a dangerous pit-
fall to any employee of the company who should pass
along this track shortly after the excavation was made,
or in other words, in the night time, as it was near dark
when he dug the hole under the track.

As to the knowledge of the defendants of the cus-
tom and method of doing this business by the Gas
Company, there was no evidence that either of the
defendants had ever been upon the Gas Company's
grounds or knew anything of the method of doing the

business, and they had no knowledge save such as they were chargeable with from the knowledge which Knight, their teamster, had, that it was the custom of the company to roll the cinders out on the track in the cinder cars. The evidence as to Knight's knowledge was to the effect that he never hauled cinders from those pits or dumps except in the day time, and he testified positively that he had never at any time seen the cinders rolled out upon the track except in the day time. If the plaintiff can recover it must be upon his contention that the act of Knight in digging under the track and making a dangerous excavation was in the furtherance of defendants' business and in the scope of his employment, and was a negligent act, from which the plaintiff might naturally suffer injury in the course of his work.

The general rule as to the liability of the master for the negligence of the servant is that if a servant acting in the execution of his master's orders by his negligence causes an injury to a third party, the master will be responsible, although the servant's act was not necessary for the proper performance of his duty to his master and the master will be responsible, although he has, in fact, in the particular instance exceeded his instructions and acted without authority. This rule is illustrated by the decision of this court in Garretzen v. Duenckel, 50 Mo. 104. And the doctrine of that case has been uniformly approved by this court in its subsequent decisions. [Chicago Herald Co. v. Bryan, 195 Mo. 574; Barree v. Cape Girardeau, 197 Mo. l. c. 391, 392, and cases cited.]

The liability of the master for his servant's torts is not based upon any presumed authority in the agent to do the act, but upon public policy, and that it is more reasonable when one of two innocent persons must suffer from the wrongful act of the third person that the master, who has employed the servant in a position of trust and confidence, should suffer than a stranger.

It was said by ANDREWS, Judge, in Higgins v. Turnpike Co., 46 N. Y. 1. c. 27: "It is sufficient to make the master responsible *civiliter* for the wrongful act of the servant that it was committed in the business of the master, and within the scope of his employment, and this, although the servant, in doing it, departed from the instructions of his master. This rule is founded upon public policy and convenience. Every person is bound to use due care in the conduct of his business. If the business is committed to an agent or servant, the obligation is not changed. . . . . If he employs incompetent or untrustworthy agents it is his fault; and whether the injury to third persons is caused by the negligence or positive misfeasance of the agent, the maxim *respondeat superior* applies, provided only that the agent was acting at the time for the principal and within the scope of the business intrusted to him." [Wahl v. Railroad, 203 Mo. 1. c. 272.]

In the last-cited case, it was observed that "the chief difficulty which has arisen in the application of this rule has been in ascertaining whether the act complained of was committed in the course of the servant's employment." In this case the evidence leaves no doubt that Knight was a servant of the defendants, nor is there any doubt whatever that it was in the scope of his employment to go to the Gas Company's premises and get a load of cinders for the defendants, so that in its last analysis the case is narrowed down to the question whether the defendants are liable for the unauthorized act of Knight in leaving the cinder pile where he was directed by the superintendent of the Gas Company, to get the load of cinders, and driving along the embankment, which supported the cinder track and digging his load from under the track and thus negligently making the excavation into which plaintiff fell and injured his knee. That he had no direct authority from the defendants to do this, goes without saying, and certainly he had none whatever

from the superintendent of the Gas Company, and in getting the cinders under the track he acted absolutely without the knowledge of the Gas Company, and as he says, in the evidence, he acted on his own responsibility, and had no authority to do so from anybody.

This court, in the case of Chandler v. Gas Co., 174 Mo. 321, for this identical injury to plaintiff, exonerated the Gas Company on the ground that there was no negligence whatever on the part of the Gas Company in granting permission to the various teamsters of persons who would purchase the cinders, because it was not negligence in them to assume that the teamsters, in availing themselves of the permission, would act as reasonable men usually act under like conditions and would at least refrain from acts of wilful wrongdoing, because although a large number of men from different concerns, Knight among others, had been hauling cinders from this dump for a considerable time, no one had ever done such a thing before, and there was nothing to suggest that such a thing was at all likely to occur, and to hold the Gas Company for this unauthorized act of Knight would have imposed upon it a higher degree of care than the law demands. But it seems apparent to us that the relation of the Gas Company to the negligent act of Knight is altogether different from that borne by the defendants Gloyd. Knight was not the servant of the Gas Company, and as held in the case of plaintiff against the Gas Company the company could not reasonably have anticipated the negligent act of Knight so as to render it liable for the injury to its servant the plaintiff, but Knight was the servant of the defendants and for his negligent act in digging the cinders from under the track, whereby plaintiff was injured, the defendants must respond if such negligent act was within the scope of Knight's employment or the scope of his authority. Whether it was so, presents the controlling question in the case. That Knight was employed by

defendants to go to the Gas Company's premises to get a load of cinders and was furnished a team by defendants to haul the same and was given the money to pay therefor, there is no doubt. That he got the cinders and delivered them to defendants is conceded. That he got the cinders for defendants and not for himself, there can be no dispute. In no sense was the getting of the cinders the private business of Knight. He did not need or want them for himself. He applied defendants' money to pay for them and turned them over to defendants. Does the fact that he violated the directions of the superintendent of the Gas Company in getting his load of cinders from under the track instead of the dump, relieve the defendants? We have seen that the fact that the servant violates the positive instructions of his master will not exonerate the master if the act was within the scope of his employment. [Garretzen v. Duenckel, 50 Mo. 104.] An act is said to be done within the scope of the servant's employment where necessary to accomplish the purpose of the employment intended for that purpose, although in excess of the powers actually conferred on the servant by the master. [26 Cyc. 1534; Railroad v. Hackett, 58 Ark. 386-7; Lynch v. Railroad, 90 N. Y. 86.]

As already said, Knight while engaged in digging the cinders under the track was not acting in his own private affair or for his own benefit, nor can any just inference be drawn from the testimony that he was acting from a motive of malice, but his taking the cinders from the fill under the track was simply to expedite his work and was clearly a negligent and unjustifiable thing to do, and the jury would have been justified in finding that his said act was within the general scope of his employment, and although not necessary or required of him by defendants it was so connected with the business which they had entrusted to him they were liable therefor, and the circuit court erred in setting aside the verdict and granting

a new trial on that ground. [Cooley on Torts (3 Ed.), p. 1025; Harriman v. Stowe, 57 Mo. 93-98, and cases cited; Howe v. Newmarch, 12 Allen (Mass.) 49.]

Moreover defendants expressly requested, and the court submitted to the jury, whether Knight was acting within the scope of his employment and were bound by the theory on which they had tried the case.

III. It is insisted by the defendants that the plaintiff was guilty of such contributory negligence in failing to light the lamp so as to have a light on the track over which he rolled the cinders, that he cannot recover in this case. As to this point the court gave the defendants an exceedingly favorable instruction to the effect that if the jury found that at the time plaintiff was injured, the Gas Company maintained a gas lamp on the corner of the store building and said lamp was intended to light the cinder track upon which plaintiff was injured, and was capable of lighting the same when such lamp was lit, and that it was the duty of the plaintiff to light said lamp on the night of the injury and he negligently failed to light it, and that his negligence directly contributed to his injuries, he could not recover.

We have examined the testimony in regard to the plaintiff's knowledge of this lamp and of his duty to light the same and we are of the opinion that it was a question of fact, which ought to have been and was submitted to the jury, and that the court would not have been justified in taking the case from the jury on the ground of plaintiff's contributory negligence. It is evident that the court did not grant a new trial on the ground of this failure to instruct the jury that as a matter of law plaintiff could not recover because of his failure to light the lamp, and we are of the opinion that the instruction was as favorable as defendants could claim.

IV. The insistence that the plaintiff based his right to recover upon the knowledge of defendants of the special and peculiar danger of the place *in the dark* and had not charged that the digging of the pit or hole under the track was negligence is not tenable. The petition expressly avers "that the defendants *negligently* and *carelessly* on the afternoon of December 27th, 1899, excavated and caused to be excavated and to remain open and unguarded a hole or pit four feet deep, eight feet long and four feet wide along, near ·and *under* said cinder track."

While the pleader did allege that the defendants knew or might have known by the exercise of ordinary care that the employees of the Gas Company would pass along said cinder track according to the customs of business aforesaid *shortly thereafter in the night time,* and Knight testified he had never seen the employees of the Gas Company wheeling said cars on said track at night, the substantial averment is the negligent act of digging such a pit under the track, where the whole surroundings indicated the danger therefrom to those servants of the Gas Company who were required to move the cars along said track, without any notice of the digging of the pit, and the mere fact that plaintiff alleged that defendants knew or might, by the exercise of ordinary care, have known of the danger to which he was soon thereafter exposed in moving his car along the track in the night time, does not restrict plaintiff's right of recovery to defendants' actual knowledge that the employees of the Gas Company worked on this track at night.· The negligence was of such character that the perpetrator of it should be required to respond for the natural and probable result thereof whether in the night or day. The gravamen of the charge is the negligent digging of the hole under the track where the most ordinary mind would

have known that the servants of the company would be called upon to go along the track and be in danger of falling therein, and the slightest inquiry on Knight's part would have notified him that the Gas Company's employees used that track constantly at night and the slightest prudence on his part would have advised the superintendent that he had dug this dangerous excavation under the track. In a word, the allegations of the petition were sufficient to submit to the jury whether the injury to plaintiff was not a natural consequence of Knight's negligent act, and the defendant was not entitled to an instruction taking the case from the jury on the ground that there was a total failure of proof as to defendant's knowledge that the plaintiff and other employees of the Gas Company moved the cinder cars on this track at night, because Knight testified he had not seen them work on the track at night.

V. The contention that Knight was the servant of the Gas Company in digging this hole under the track and not the servant of the defendants, we think is wholly unreasonable. We cannot conceive of a plainer case of the relation of master and servant than this record discloses between defendants and Knight. Knight was engaged in defendants' business alone and not that of the Gas Company.

VI. Finally it is urged that the verdict is excessive; that while the court in its instructions limited the damages to those proximately and naturally resulting from defendants' negligence, the jury allowed for injuries which resulted from his disobeying the injunction of his physician to engage in light work only and unloaded a car of coal and thus permanently injured his knee. This record presents a very difficult question. The new trial in this case was granted by a judge who did not hear the testimony or see the witnesses. He granted the new trial on the ground that

plaintiff was not entitled to recover at all or in any amount, and if we are right, he erred in so doing, but as already remarked, defendants are not precluded from showing they were entitled to a new trial on any other ground assigned in their motion. Judge Teasdale who presided at the trial, at one time overruled the motion for new trial on the condition that plaintiff remit $3,500 of his verdict, and plaintiff accepted that condition and filed a *remittitur* of $3,500, thus reducing his verdict to $4,000. It is true this order was afterwards set aside and plaintiff was allowed to withdraw his *remittitur* and then the new trial was granted on the ground that plaintiff could not recover at all. Defendants now insist there is nothing upon which this court can intelligently adjudge that a *remittitur* should be required, nor say what amount should be remitted. Whatever the writer may think of defendants' contention, it is now the settled practice of this court to require or allow a *remittitur* and since the judge who heard the cause found the verdict excessive and fixed the *remittitur* and the plaintiff accepted it on condition that his verdict should otherwise stand, it furnishes at least reasonable ground for holding the verdict was excessive, since plaintiff accepted the condition. That plaintiff received serious injuries by the negligence of defendants we think is absolutely established, and while he may have contributed to the permanent character of his injury by undertaking too heavy work before he had entirely recovered, he can justly attribute a large part of his injury to defendants. We think that having accepted the condition of remitting $3,500 he is in no position to complain of that order and the judge who heard the cause having fixed that amount, we have a reasonable basis for requiring plaintiff to remit that amount in this court and defendants have little ground for complaint that the damages are so reduced. In our opinion this will approximate justice between the parties

as nearly as it can be reached under the circumstances.

The judgment of the circuit court therefore will be reversed if plaintiff shall within ten days file a *remittitur* of thirty-five hundred dollars of his verdict as of the day of the rendition, otherwise the judgment will be affirmed.

*Burgess* and *Fox, JJ.,* concur.